## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**WELLS FARGO BANK, N.A.,**

      **Plaintiff,**

**v.**

**AIRPORT MINI MALL, LLC, YES
ASSETS, LLC, JEROME C. YEH,
JENNY YEH, AND DONALD YEH,**

      **Defendants.**

**CIVIL ACTION FILE NO.
1:17-cv-04249-AT**

### MEMORANDUM OF LAW IN SUPPORT OF
### WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

Defendants admit they received a windfall of about $300,000.00 when they intentionally (upon advice of counsel) withdrew substantially all of the money in their Wells Fargo's accounts for the sole purpose of avoiding a legal garnishment process in the Spring of 2017. The plain language of the governing account agreements and equitable principles under Georgia law require that Defendants return that benefit they surreptitiously received. As such, the Court should grant summary judgment on Wells Fargo's claims against Defendants.

In February 2017, a $1.9 million judgment was entered in this Court against Defendants (except Jenny Yeh) in favor of Luxottica and Oakley. On April 21,

2017, Luxottica and Oakley filed a garnishment action naming the above judgment debtors as defendants and Wells Fargo as a garnishee. After the garnishment action was filed, at their attorneys' direction, Defendants withdrew substantially all of their funds from their Wells Fargo accounts, withdrawing about $300,000.00 for the purpose of preventing Oakley/Luxottica from garnishing their funds. Defendants admit they used these withdrawn funds for their benefit.

Wells Fargo was served with a summons of garnishment on April 21, 2017 and was required by Georgia law to pay $312,829.00, the property in Defendants' accounts on the date of service (plus any deposits during the garnishment period), to the court. Wells Fargo initially failed to locate Defendants' accounts prior to Defendants withdrawing substantially all of their funds from their accounts. When Wells Fargo discovered Defendants' accounts, because of Defendants' intentional actions to withdraw their money and avoid the garnishment process, Defendants' accounts did not have sufficient funds to cover Wells Fargo's legally required payment to the court. As a result, in accordance with the governing account agreements, Wells Fargo overdrew Defendants' accounts in the amount of $300,573.96 to make the required payment to the court. The agreements required Defendants to make deposits to return the accounts to a positive balance, but Defendants' failed to do so. Such failure was a breach of the agreements and Wells

Fargo is entitled to recover its damages for the breach, including the amount of the overdrafts, prejudgment interest, and attorneys' fees and expenses.

In addition, as the payment that Wells Fargo paid into the garnishment action reduced the $1.9 million judgment by $312,829.00, Defendants were unjustly enriched by Wells Fargo's payment. Defendants should not be able to retain this benefit for which they paid nothing. As such, under the equitable theories of unjust enrichment and money had and received, the Court should require the Defendants to return this substantial benefit conferred upon them.

## STATEMENT OF FACTS

### I.     Contractual Relationship Between Defendants and Wells Fargo.

Defendants maintained banking accounts with Wells Fargo. As set forth below, for all of these accounts, Defendants acknowledged in writing that the accounts were governed by the applicable account agreements.

#### A.     Defendants' Accounts With Wells Fargo.

Defendant Airport Mini Mall, LLC ("Airport Mini") maintained three accounts with Wells Fargo. *See* Rule 30(b)(6) Deposition of Airport Mini Mall, LLC taken on July 16, 2018 ("Airport Depo.") 34:7-12.[1] The last four digits of

---

[1]Excerpts from the Airport Depo. are attached hereto as Exhibit A.

these accounts were AMM #2317, AMM #9333, and AMM #3038. *Id.* When Airport Mini opened these accounts, it signed a signature card or account application wherein Airport Mini agreed to be bound by the applicable deposit and account agreements. *See* Airport Depo. 21:5-22:6, Ex. 2 (AMM #2317), 29:18-30:22, Ex. 4 (AMM #9333), and 31:18-32:16, Ex. 6 (AMM #3038).

The signature card for AMM #2317 states: "By signing this Signature Card, the Authorized Representative, binds the Customer to the Wachovia[2] Deposit Agreement or other applicable deposit agreement expressly agreed to between Wachovia and the Customer . . ." Airport Depo. Ex. 2. And, a depository authorization and agreement for this same account states, "As an Authorized Representative, the undersigned agrees, on behalf of the Company, to the terms and conditions of the Wachovia Deposit Agreement and Disclosures for Commercial Accounts . . . " Airport Depo. Ex. 2.

Likewise, the signature card for AMM #9333 states: "By signing this Signature Card, the Authorized Representative, binds the Customer to the Wachovia Deposit Agreement or other applicable deposit agreement expressly

---

[2]In 2010, Wells Fargo became the successor-in-interest to Wachovia. *See* Affidavit of Cynthia Bennett-Parks on behalf of Wells Fargo ("WF Aff.") ¶ 23. Defendants acknowledge Wachovia became Wells Fargo and their relationship was with Wells Fargo in 2017. *See* Airport Depo. 18:24-19:11.

agreed to between Wachovia and the Customer . . ." Airport Depo. Ex. 4. And, the application for account AMM #3038 states: "The Customer's use of any Bank deposit account, product or service will confirm Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement . . . "  Airport Depo. Ex. 6.

Airport Mini admitted it received account statements for these accounts via mail to a P.O. Box in 2017. *See* Airport Depo. 34:17-35:6 and Exs. 8, 9 (AMM #2317), Exs. 8, 10 (AMM #9333), Ex. 11 (AMM #3038). Moreover, Airport Mini admitted as part of its banking relationship with Wells Fargo, it wrote checks on its bank accounts and made deposits into those accounts.  Airport Depo. 19:12-23.

Defendant Yes Assets, LLC ("Yes Assets") maintained three banking accounts with Wells Fargo. *See* Rule 30(b)(6) Deposition of Yes Assets, LLC taken on July 16, 2018 ("Yes Depo.") 13:25-14:1, 15:8-16:5, 19:3-12, 20:22-21:9.[3] The last four digits of these accounts were Yes #6179, Yes #2774, and Yes #1314. *Id.* In connection with the opening of these accounts, Yes Assets signed a signature card or an account application wherein Yes Assets agreed to be bound by the

---

[3]Excerpts from the Yes Depo. are attached hereto as Exhibit B.

applicable deposit and account agreements. *See* Yes Depo. Ex. 1 (Yes #6179), Ex. 3 (Yes #2774), and Ex. 4 (Yes #1314).

The signature card for Yes #6179 states: "I/We agree to the terms and conditions of the Wachovia Deposit Agreement for this account(s) . . . [and] hereby acknowledge receipt of a Deposit Agreement . . . " Yes Depo. Ex. 1. The signature card for Yes #2774 states: "By signing this Signature Card, the Authorized Representative, binds the Customer to the Wachovia Deposit Agreement or other applicable deposit agreement expressly agreed to between Wachovia and the Customer . . ." Yes Depo. Ex. 3. And, the application for account Yes #1314 states: "The Customer's use of any Bank deposit account, product or service will confirm Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement . . . " Yes Depo. Ex. 4, p. 3.

Yes Assets received account statements for these accounts via mail to a P.O. Box in 2017. Yes Depo. 23:3-24:6-21, Ex. 6 (Yes #6179 and Yes #2774), Ex. 7 (Yes #1314). Moreover, Yes Assets admitted as part of its banking relationship with Wells Fargo, it wrote checks on its bank accounts and made deposits into those accounts. Yes Depo. 14:17-23. Yes Assets also understood its accounts were

governed by certain rules and regulations that governed when an account could be debited.  Yes Depo. 14:24-15:11.

Defendants Jenny and Jerome Yeh maintained a joint account with Wells Fargo. *See* Deposition of Jenny Yeh taken on July 16, 2018 ("Jenny Yeh Depo.") 16:7-17, 17:2-10;[4] Deposition of Jerome Yeh taken on July 16, 2018 ("Jerome Yeh Depo.") 14:18-15:15.[5]  In connection with the opening of this account, Jenny Yeh signed a signature card wherein Jenny and Jerome Yeh agreed to be bound by the applicable deposit and account agreement. *See* Jenny Yeh Depo. 16:7-17 and Ex. 1; Jerome Yeh Depo. 15:9-15 and Ex. 1. This signature card states: "I agree to be bound by the terms and conditions, including but not limited to Wachovia's Deposit Agreement and Disclosures, applicable to each product or service which I obtain from Wachovia now or in the future. . . "  Jenny Yeh Depo. Ex. 1.

Mr. and Mrs. Yeh received statements for this account via mail to a P.O. Box in 2017. Jenny Yeh Depo. 26:9-27:5. Moreover, they admitted that as part of their banking relationship with Wells Fargo, they wrote checks and made deposits into the account. Jenny Yeh Depo. 23:19-24:19; Jerome Yeh Depo. 20:16-21:4.

---

[4] Excerpts from the Jenny Yeh Depo. are attached hereto as Exhibit C.

[5] Excerpts from the Jerome Yeh Depo. are attached hereto as Exhibit D.

Donald Yeh maintained an account with Wells Fargo. *See* Deposition of Donald Yeh taken on July 16, 2018 ("Donald Yeh Depo.") 10:3-11:15.[6] When he opened this account, Donald Yeh signed a signature card wherein he agreed to be bound by the applicable deposit and account agreement. *See* Donald Yeh Depo. 11:16-12:1 and Ex. 1. This signature card states: "I, for myself or, if an authorized signer for a depositor, for such depositor, have received and read the 'Terms and Conditions Governing Your Deposit Account' provided to me and hereby accept and agree to such terms and conditions, as amended from time to time, for the account designated above." Donald Yeh Depo. Ex. 1. In 2017, Donald Yeh received his account statements for this account online and he did all of his banking online. Donald Yeh Depo. 12:19-21, 13:6-7.

**B.      Governing Account Agreements.**

In 2017, the accounts of Airport Mini and Yes Assets were governed by a Business Account Agreement. *See* WF Aff. ¶¶ 32-34 and Exs. 13, 14.[7] During the same time period, Donald Yeh's account and the joint account of Jenny and Jerome

---

[6] Excerpts from the Donald Yeh Depo. are attached hereto as Exhibit E.

[7] The Business Account Agreements at Exhibit 13 and Exhibit 14 became effective, respectively, on April 29, 2016 and April 24, 2017. WF Aff. ¶¶ 29-30, Exs. 13, 14. As the relevant language in these Agreements is identical, the Agreements are referred to herein as the "Business Account Agreement."

Yeh were governed by a Consumer Account Agreement. WF Aff. ¶¶ 30-31, 34 and Exs. 11, 12.[8] As the language relating to garnishments and overdrafts is identical in the Business Account Agreement and the Consumer Account Agreement, both are referred to herein as the "Account Agreement."

The Account Agreement states in pertinent part:

> If we [Wells Fargo] incur any fees or expenses (including attorney's fees and expenses) due to responding to legal process related to your account, we may charge these costs to any account you maintain with us.

WF Aff. ¶ 37. The Account Agreement clearly states a legal process includes a "garnishment." *See id.*

The Account Agreement also states that Wells Fargo may pay a transaction into overdraft "if the available balance in your account is not enough to pay all of your transactions . . . ." WF Aff. ¶ 38. The Account Agreement further states:

> If you have an *overdraft*[9] on your account (including transactions we have paid on your behalf into *overdraft*, plus any fees), you must make a deposit or transfer promptly to return your account to a positive balance.

---

[8] The Consumer Account Agreements at Exhibit 11 and Exhibit 12 became effective, respectively, on April 29, 2016 and April 23, 2017. WF Aff. ¶¶ 30-31, Exs. 11-12. As the language in these Agreements is identical, the Agreements are referred to herein as the "Consumer Account Agreement."

[9] A "overdraft" is defined as a "negative balance." WF Aff. ¶ 39.

> If you fail to bring your checking account to a positive balance, we will close your account. . . . You agree to reimburse us for the costs and expenses (including attorneys' fees and expenses) we incur.

WF Aff. ¶ 39. Thus, the Account Agreement gave Wells Fargo the contractual right to (1) charge Defendants' accounts in connection with responding to a garnishment related to Defendants' accounts and (2) pay the accounts into overdraft if the available balance was not sufficient to make the garnishment payment.

## II.    Oakley Judgment and the Garnishment Action.

In February 2017, a $1.9 million judgment was entered against Airport Mini, Yes Assets, Jerome Yeh, Donald Yeh and Alice Jamison in favor of Luxottica Group, S.p.A. and Oakley, Inc. (the "Oakley Judgment"). Airport Depo. 38:24-39:11 and Ex. 12. Defendants admit they received a garnishment action that was filed with the State Court on April 21, 2017 (the "Garnishment Action"). Airport Depo. 41:13-18, Ex. 13; Yes Depo. 25:16-26:8. The garnishee defendants were Airport Mini, Yes Assets, Jerome Yeh, Donald Yeh and Alice Jamison. Certified copy of Garnishment Action attached hereto as Exhibit F. Defendants did not make any filing in the Garnishment Action. Airport Depo. 43:2-13; Yes Depo. 26:9-13.

## III.    Defendants Make Withdrawals From the Wells Fargo Accounts.

After the Oakley Judgment was entered and on advice of counsel from Defendants' lawyer, Louis Bridges, Defendants withdrew substantially all the

money from their Wells Fargo accounts. [Doc. 11 ¶ 1]; Airport Depo. 80:1-12;

Jenny Yeh Depo. 36:20-37:2, 53:1-10.

In early May 2017, Airport Mini made the following withdrawals:

| | | |
|---|---|---|
| AMM #2317 | $30,743.34 | Airport Depo. 50:3-20 and Ex. 14 |
| AMM #2317 | $ 6,747.55 | Airport Depo. 50:14-24 and Ex. 14 |
| AMM #9333 | $ 8,156.21 | Airport Depo. 57:9-14 and Ex. 15 |
| AMM #3038 | $63,391.90 | Airport Depo. 60:9-12 and Ex. 16 |

The total amount of the withdrawals made by Airport Mini was $109,039.00.

In late April 2017, Yes Assets made the following withdrawals:

| | | |
|---|---|---|
| Yes #6179 | $12,086.11 | Yes Depo. 28:5-11 and Ex. 9 |
| Yes #2774 | $98,818.36 | Yes Depo. 31:4-15 and Ex. 10 |
| Yes #1314 | $28,827.63 | Yes Depo. 32:19-33:9 and Ex. 11 |

The total amount of the withdrawals made by Yes Assets was $139,732.10.

On May 1, 2017, Jenny Yeh went into Wells Fargo and wrote a check to herself for $34,884.00 from her joint account with Mr. Yeh. Jenny Yeh Depo. 35:9-12 and Ex. 7. On May 1, 2017, Donald Yeh made a Venmo payment to himself in the amount of $1,050.00. Donald Yeh Depo. 16:3-9.

## IV.   Wells Fargo Answers the Garnishment Action.

Wells Fargo was served with a summons of garnishment on April 21, 2017. WF Aff. ¶ 41. Due to an incomplete search by a processor, Wells Fargo did not initially identify Defendants' accounts at the time it was served with the Garnishment Action. *Id.* at ¶ 42. After Wells Fargo became aware that Defendants

had accounts at Wells Fargo, on or about June 23, 2017, Wells Fargo answered the Garnishment Action and made a payment of $312,829.00 to the state court as required by the Georgia garnishment statute.  WF Aff. ¶¶ 43-44 and Ex. 16; *see also* Certified Copy of Wells Fargo's Answer attached hereto as Exhibit G.

When Wells Fargo made the payment in the Garnishment Action in June 2017, the account statements for Defendants' accounts reflected that "legal order debits" were made and Airport Mini, Yes Assets and Donald Yeh admitted seeing these "legal order debits" on their statements. Airport Depo. 62:21-63:9 and Ex. 9, 67:13-20 and Ex. 10, 69:23-70:7 and Ex. 11; Yes Depo. 33:21-34:4 and Ex. 6, 36:14-21 and Ex. 6; 38:19-24 and Ex. 7; Donald Yeh Depo. 17:15-24 and Ex. 2; Jenny Yeh Depo. Ex. 5. All of these legal order debits were made by June 14, 2017. *Id.* And, Airport Mini and Yes Assets admitted receiving written correspondence in the mail notifying them of these legal order debits.  Airport Depo. 64:21-65:5 and Ex. 17, 68:11-69:2 and Ex. 19, 70:20-71:9 and Ex. 21; Yes Depo. 34:21-35:12 and Ex. 12, 37:10-38:2 and Ex. 14, 39:15-40:11 and Ex. 16. Thus, Defendants were aware of the debits made to their accounts in connection with Wells Fargo's payment to the Court.

Moreover, Defendants were aware that after Wells Fargo applied the legal order debits to their accounts, the accounts had significant negative balances as

Wells Fargo had to overdraw the accounts to make the legally required payment to the court. Airport Depo. 63:22-64:4, 67:5-7; Yes Depo. 41:7-11; WF Aff. ¶ 45. After receiving the notices of the legal order debits and the negative balances in their accounts, Defendants never deposited any additional money in their accounts. Airport Depo. 66:25-67:4, 68:1-4; Yes Depo. 41:7-11; Jerome Yeh Depo. 33:21-25; Jenny Yeh Depo. 46:11-13; Donald Yeh Depo. 19:25-20:6. Approximately a month later, when Wells Fargo closed Defendants' accounts, negative balances in all of the accounts remained. Airport Depo. 64:14-17, 68:5-7, 70:13-16; Yes Depo. 34:12-17, 37:2-6, 39:8-11; Jenny Yeh Depo. 46:11-13, 67:1-16; Donald Yeh Depo. 20:7-16.

Due to the overdrafts in Defendants' accounts and associated fees incurred and after setting off against the remaining funds in Defendants' accounts at the time the legal order debits were processed, the negative balances in each of the accounts at the time of the accounts were closed were as follows:

    (1)    ($43,355.86) from Yes #6179;
    (2)    ($98,943.36) from Yes #2774;
    (3)    ($28,919.63) from Yes #1314;
    (4)    ($30,470.30) from AMM #2317;
    (5)    ($  8,156.21) from AMM #9333;
    (6)    ($63,423.81) from AMM #3038;
    (7)    ($  1,649.10) from Donald Yeh; and
    (8)    ($25,655.69) from the Jenny and Jerome Yeh.

WF Aff. ¶ 46 and Exs. 17-24.  Thus, the total negative balance in the accounts was $300,573.96 (the "Overdraft Balance").  WF. Aff. ¶ 46.

## V.    Defendants Receive Benefit From Wells Fargo's Payment.

Defendants admit they received a substantial benefit from Wells Fargo's payment of $312,829.00 in the Garnishment Action. Defendants acknowledge the current balance on the Oakley Judgment is approximately $1.6 million and the approximate $300,000.00 reduction is due to Wells Fargo's payment. Airport Depo. 40:9-24; Yes Depo. 27:6-16; Jenny Yeh Depo. 31:17-32:4. Moreover, Defendants admit they used the money they withdrew from their accounts in April and May 2017 to pay their bills. Airport Depo. 59:1-5, 61:10-18; Yes Depo. 32:4-8, 33:14-20; Donald Yeh Depo. 16:7-9; Jenny Yeh Depo. 38:17-39:8. Thus, Defendants admit they received a windfall from the situation – they used the almost $300,000.00 they withdrew for their benefit and they received an over $300,000.00 benefit by having the Oakley Judgment reduced by Wells Fargo's payment to the state court. Defendants acknowledge the receipt of this double benefit by admitting that if the Oakley Judgment is overturned (it is currently on appeal, Airport Depo. 48:16-18) and Oakley/Luxottica returns to Defendants the over $300,000.00 Wells Fargo paid toward the Oakley Judgment, that this money would *belong to Wells Fargo*. Airport Depo. 49:3-7; Yes Depo. 27:6-16.

## VI.   Wells Fargo Is Entitled To Attorneys' Fees.

Pursuant to the Account Agreement, the Defendants also are required to pay to Wells Fargo any fees or expenses incurred by Wells Fargo in responding to the Garnishment Action.  WF Aff. ¶ 47. As such, Defendants are required to pay to Wells Fargo the legal expenses it incurred in making the required filings in the Garnishment Action. Moreover, the Account Agreement also provides Wells Fargo may recover from Defendants "the costs and expenses (including attorneys' fees and expenses)" Wells Fargo incurs in recovering an overdraft amount. WF Aff. ¶ 48. Thus, Wells Fargo is also entitled to recover its fees and expenses incurred in bringing this action against Defendants to recover the Overdraft Balance.

## ARGUMENT

## I.   Legal Standard For Summary Judgment.

Summary judgment must be granted when the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. "Contract disputes are particularly suited for summary adjudication because construction of contracts is ordinarily a matter of law for the court." *Elwell v.*

*Keefe*, 312 Ga. App. 393, 394-95, 718 S.E.2d 587, 589  (2011); *see also Wile v. Paul Revere Life Ins. Co.*, 410 F.Supp. 2d 1313, 1320 (N.D. Ga. 2005) ("Interpreting a contract is generally a question of law for the Court.").

## II.   Wells Fargo Is Entitled To Summary Judgment On Its Breach Of Contract Claim.

As Defendants and Wells Fargo entered into a contract – the Account Agreement – and Defendants breached that contract by not depositing money into their accounts after the creation of the overdrafts, Wells Fargo is entitled to summary judgment on its breach of contract claim.

Under Georgia law, "[t]he deposit agreement . . . the signature card and the checks drawn against the account are the contract documents between the bank and the customer." *See Federal Deposit Ins. Corp. v. West*, 244 Ga. 396, 398, 260 S.E.2d 89, 91 (1979); *see also APCOA, Inc. v. Fidelity Nat'l Bank*, 703 F. Supp. 1553, 1559 (N.D. Ga. 1988) ("Under Georgia law the relationship between a bank and its depositor is contractual in nature."); *Gray v. Bank of America, N.A.*, 2017 WL 552780, *6 (N.D. Ga. Feb. 10. 2017) (recognizing the deposit agreement is a contract between the bank and its customer). Wells Fargo and Defendants entered into a binding contract when Defendants opened their accounts with Wells Fargo. Defendants, by signing the account opening documents and using their bank accounts, bound themselves to the terms of the applicable account agreement with

Wells Fargo. In 2017, the account agreement that governed their accounts was the Account Agreement. WF Aff. ¶ 34.

The plain terms of the Account Agreement provide that Wells Fargo had the contractual right to charge Defendants' accounts for any expenses Wells Fargo incurred in responding to the Garnishment Action. WF Aff. ¶ 37. Wells Fargo responded to the Garnishment Action as required by law and filed its answer on or about June 23, 2017. WF. Aff. ¶ 43 and Ex. 16; Certified Copy of Answer. At that same time, Wells Fargo sent its legally required payment to the state court in the amount of $312,829.00. *Id.*

Notably, Georgia law *required* that Wells Fargo answer the Garnishment Action and send the $312,829.00 payment. To that end, the Georgia garnishment statute provides that "[a]ll obligations owed by the garnishee [Wells Fargo] to the defendant [Defendants] at the time of service of the summons of garnishment upon the garnishee [Wells Fargo] and all obligations accruing from the garnishee to the defendant throughout the *garnishment period* shall be subject to the process of garnishment." O.C.G.A. § 18-4-4(a) (emphasis added). The "garnishment period" for financial institutions such as Wells Fargo includes the five days after service. *See* O.C.G.A. § 18-4-4(c)(2). Moreover, a financial institution like Wells Fargo is required to pay the money subject to the garnishment when the financial institution

files its answer in the garnishment action. *See* O.C.G.A. § 18-4-10(c). Thus, when Wells Fargo filed its answer on June 23, 2017, Wells Fargo *was legally required* to make the $312,829.00 payment as it represented the amount in Defendants' accounts on the date of service, plus five days thereafter.  WF Aff. ¶ 44.[10]

When Wells Fargo made the payment to the state court, Defendants did not have sufficient funds in their accounts as they had withdrawn most of the money upon advice of counsel. However, the plain terms of the Account Agreement clearly provided that Wells Fargo was within its contractual right to *charge* Defendants' accounts for the expense it incurred in answering the garnishment. WF Aff. ¶ 37. These charges, or legal order debits, caused overdrafts in Defendants' accounts and left the accounts with negative balances. The Account Agreement explicitly permitted Wells Fargo to make the payment to the State Court even "if the available balance in [the] account is not enough to pay" the transaction and would cause an overdraft in Defendants' accounts.  WF Aff. ¶ 38.  Thus, Wells

---

[10] Wells Fargo's initial failure to locate Defendants' accounts did not relieve it of its legal obligation to answer the Garnishment Action and make the required payment. *See Mobile Paint Mfg. Co., Inc. v. Johnson*, 219 Ga. App. 299, 300, 464 S.E.2d 903, 905 (1995) ("Nor does the fact that NationsBank was unable to locate the account relieve the bank from its responsibilities under the garnishment statutes."). Once Wells Fargo determined Defendants were customers of Wells Fargo, it was required by law to file the answer and pay the funds.

Fargo's payment to the state court and the creation of the overdrafts in Defendants' accounts were explicitly permitted by the plain terms of the Account Agreement.

After the creation of the overdrafts and the corresponding negative balance in Defendants' accounts, the Account Agreement required Defendants to make a deposit to return the accounts to a positive balance. WF Aff. ¶ 39. Defendants admit they never made any deposits into their accounts after the overdrafts were created. Airport Depo. 66:25-67:4, 68:1-4; Yes Depo. 41:7-11; Jerome Yeh Depo. 33:21-25; Jenny Yeh Depo. 46:11-13; Donald Yeh Depo. 19:25-20:16. Thus, without dispute, Defendants breached the Account Agreement. *See Douglas v. McNabb Realty Co.*, 78 Ga. App. 845, 853, 52 S.E.2d 550, 556 (1949) ("A contract is breached by a party to it who is bound by its provisions to perform some act toward its consummation and who, without legal excuse on his part and through no fault of the opposite party, declines to do so.").

For this breach, Defendants are liable to Wells Fargo for the damages Wells Fargo has sustained. *See* O.C.G.A. § 13-6-2 ("Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach."). As a result of Defendants' breach, Wells Fargo has suffered actual damages in the principal amount of $300,573.96 – the amount

of the overdrafts – or negative balance – in Defendants' accounts caused by Wells Fargo making its legally required payment to the state court. WF Aff. ¶ 46.

In addition, Wells Fargo is legally entitled to prejudgment interest at a rate of 7% on this liquidated amount. *See* O.C.G.A. § 7-4-2; *Great Am. Ins. Co. v. Int'l Ins. Co.*, 753 F. Supp. 357, 364 (1990) ("Under Georgia law, if a sum is liquidated, pre-judgment interest accrues from the date of demand at a rate of 7 percent per annum."). "A liquidated sum is an amount certain and fixed, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing." *Great Am.*, 753 F. Supp. at 364; *see also* O.C.G.A. § 7-4-15 ("All liquidated  demands . . . bear interest from the time the party shall become liable and bound to pay them . . ." ). All of the accounts were overdrawn by June 14, 2017 and Defendants never deposited any money into their accounts after that date. As such, Wells Fargo is entitled to prejudgment interest on the $300,573.96 from June 14, 2017 to the entry of judgment in this action. Finally, the Account Agreement makes clear Defendants are liable to Wells Fargo for attorneys' fees and expenses incurred in responding to the Garnishment Action and in prosecuting this action to recover the overdrafts. WF Aff. ¶¶ 47-48. [11]

---

[11] Upon the Court's grant of Wells Fargo's Motion, Wells Fargo requests fourteen (14) days to submit evidence of the total amount of attorneys' fees and
(footnote continued)

The parties entered into a contract – the Account Agreement – and Defendants breached that Agreement by not depositing money into their accounts once the overdrafts were created. Wells Fargo is entitled to recover for damages it has sustained as a result of Defendants' breach. *See, e.g., Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010) ("The elements of a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."). As such, Wells Fargo respectfully requests the Court grant Wells Fargo's Motion as to its breach of contract claim.

## III.   Wells Fargo Is Entitled To Summary Judgment On Its Unjust Enrichment Claim.

As stated above, Defendants are liable for breaching the Account Agreement by not depositing money into their accounts after the accounts became overdrawn due to Wells Fargo's legally required payment in the Garnishment Action. In any event, if the Court were to find Wells Fargo and Defendants' banking relationship was not governed by the Account Agreement, the Court should still enter judgment

---

expenses incurred in connection with answering the Garnishment Action and filing this action.

against Defendants in Wells Fargo's favor as Defendants have been unjustly enriched by Wells Fargo's payment to the state court.

Under Georgia law, a "claim of unjust enrichment will lie if there is no legal contract and the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return." *Campbell v. Ailion*, 338 Ga. App. 382, 386-87, 790 S.E.2d 68, 73 (2016). "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." *Campbell*, 338 Ga. App. at 387, 790 S.E.2d at 73. "[I]in order to state a claim for unjust enrichment, [Wells Fargo] must show that (1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust." *Landcastle Acquisition Corp. v. First-Citizens Bank & Trust Co.*, 2017 WL 2813674, *3 (N.D. Ga. June 29, 2017).

Without dispute, Wells Fargo conferred a substantial benefit on Defendants when it made the $312,829.00 payment to the state court and such payment reduced the Oakley Judgment by that amount. And, Defendants never paid or compensated Wells Fargo for such payment as Defendants never made any deposit in their accounts after the payment was made. If Defendants are not required to

compensate Wells Fargo for its payment to the state court, such result would be highly unjust. Defendants admit they used the funds they withdrew from their accounts in April and May 2017 to avoid the Garnishment Action to pay their bills and expenses. Defendants further admit that Wells Fargo's payment to the state court reduced the Oakley Judgment by over $300,000.00.[12] Yes Assets even admits if Oakley/Luxicotta returns the money paid by Wells Fargo (if Defendants prevail on appeal), that the money Oakley/Luxicotta returns *will belong to Wells Fargo*. This admission clearly shows Defendants understand their windfall.

Moreover, no prejudice will lie if Wells Fargo prevails on the unjust enrichment claim. Before Wells Fargo made the required payment to the court, Defendants had a $1.9 million judgment against them. After Wells Fargo made the payment, the judgment was reduced to approximately $1.6 million. If Wells Fargo obtains a judgment in this action, Defendants will then have two judgments against them – instead of one – for approximately $1.9 million. Thus, there is no prejudice to Defendants in putting them back in the same position they were in prior to Wells

---

[12] Moreover, despite having a mechanism under Georgia law to file any objection in the Garnishment Action regarding Wells Fargo's payment, *see* O.C.G.A. § 18-4-15, Defendants failed to make any such filing despite their notice of the Garnishment Action and the legal order debits made by Wells Fargo to make the payment to the state court.

Fargo making the payment to the court. For all these reasons, should the Court decide that the Account Agreement does not govern the relationship between Wells Fargo and Defendants, the Court should grant Wells Fargo's Motion as to the unjust enrichment claim.

## IV.   Wells Fargo Is Entitled To Summary Judgment On Its Money Had And Received Claim.

Finally, the Court should also grant summary judgment on Wells Fargo's claim for money had and received.  Under Georgia law, Wells Fargo may recover from the Defendants the total amount of the overdrafts in Defendants' accounts to the extent the overdrafts were created by a mistake by Wells Fargo in initially locating Defendants' accounts after being served with the Garnishment Action. *See Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 406, 349 S.E.2d 368, 373 (1986) (holding that a plaintiff "generally can recover a payment mistakenly made when that mistake was caused by his lack of diligence or his negligence in ascertaining the true facts and the other party would not be prejudiced by refunding the payment-subject to a weighing of the equities between the parties by the trier of fact."); *see also Landers v. Heritage Bank*, 188 Ga. App. 785, 787, 374 S.E.2d 353, 355 (1988) ("An action for money had and received lies in all cases where another has received money which the plaintiff ex aequo et bono is entitled to recover and which the defendant is not entitled to retain. . . .").

Upon being served with the Garnishment Action on April 21, 2017, Wells Fargo initially failed to discover that Defendants had Wells Fargo accounts. Defendants, upon advice of counsel, withdrew about $300,000.00 from their Wells Fargo accounts to avoid the Garnishment Action.

Defendants have received money Wells Fargo is entitled to recover and Defendants are not entitled to retain. Under the legally recognized theory of money had and received, Wells Fargo is entitled to recover the money that Wells Fargo was required to pay into the State Court that created a negative balance of $300,573.96 in Defendants' accounts. Defendants will not be prejudiced by paying this money as Defendants have, without dispute, received a double benefit by taking advantage of Wells Fargo's mistake. For this reason, the Court should grant Wells Fargo's Motion as to its money had and received claim.

## V.   Wells Fargo Is Entitled to Its Attorneys' Fees Under O.C.G.A. § 13-6-11.

In addition to its contractual right to recover its fees and expenses, the Court should grant summary judgment to Wells Fargo on its claim to fees and expenses under O.C.G.A. § 13-6-11 as Defendants have been stubbornly litigious in refusing to repay the funds to Wells Fargo and forcing this issue to be litigated before this Court, and has caused Wells Fargo unnecessary trouble and expense both in the underlying transaction and in forcing it to bring this lawsuit.

Respectfully submitted this 16th day of November, 2018.

**PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ Julie A. Wood*
Nancy H. Baughan
Georgia Bar No. 042575
Julie A. Wood
Georgia Bar No. 023749

303 Peachtree Street, NE
Suite 3600
Atlanta, Georgia  30308
Telephone:  404-523-5300
Facsimile:  404-522-8409
E-mail: nbaughan@phrd.com
E-mail: jwood@phrd.com

*Counsel for Plaintiff Wells Fargo*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that the foregoing document was prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Time New Roman and a point size of 14, and that the foregoing document does not exceed twenty-five pages as set forth in Local Rule 7.1 of the Northern District of Georgia.

This 16th day of November, 2018.

*/s/ Julie A. Wood*
Julie A. Wood

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically submitted the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF WELLS FARGO'S MOTION**

**FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system

which automatically sent e-mail notification of such filing to all attorneys of

record.

> Daniel J. Huff
> Huff, Powell & Bailey, LLC
> 999 Peachtree Street, NE
> Suite 950
> Atlanta, Georgia 30309

This 16th day of November, 2018.

> */s/ Julie A. Wood*
> Julie A. Wood