## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**WELLS FARGO BANK, N.A.,**

       **Plaintiff,**

**v.**

**AIRPORT MINI MALL, LLC, YES
ASSETS, LLC, JEROME C. YEH,
JENNY YEH, AND DONALD YEH,**

       **Defendants.**

**CIVIL ACTION FILE NO.
1:17-cv-04249-AT**

## MEMORANDUM OF LAW IN OPPOSITION OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants filed their Motion for Summary Judgment seeking to keep a benefit of $312,829.00 they obtained and unjustly retained after Wells Fargo failed to initially locate their accounts after being served with a garnishment action. Defendants admit to receiving this benefit and using this benefit for their own purposes. However, Defendants fail to make any sound legal argument to support their contention that they are legally entitled to retain this windfall. They simply take the position that Wells Fargo's initial failure to find Defendants' accounts upon service of the garnishment action should entitle them to pocket nearly a third of a million dollars to the detriment of Wells Fargo, despite Defendants being

contractually and equitably required to repay such money. For all the reasons stated herein and stated in Wells Fargo's Memorandum of Law in Support of its Motion for Summary Judgment, the Court should deny Defendants' Motion for Summary Judgment as to Wells Fargo's breach of contract and equitable claims.

## PRELIMINARY STATEMENT

Wells Fargo was served with a summons of garnishment for a garnishment action on April 21, 2017. WF Aff. ¶ 41.[1]  The Georgia garnishment statute required Wells Fargo to pay to the state court all the money in Defendants' accounts on the date of service, plus five days thereafter. *See* O.C.G.A. § 18-4-4(a). Due to a mistake made by an employee, Wells Fargo did not immediately locate Defendants' accounts when it was served with the garnishment action on April 21, 2017.  Defendants quickly took advantage of the delay and (with knowledge of the garnishment and upon advice of counsel) withdrew approximately $300,000.00 from their accounts to circumvent the garnishment process. WF Aff. ¶ 42; Airport Depo. 80:1-12; Jenny Yeh Depo. 36:20-37:2, 53:1-10.[2]  Once Wells Fargo

---

[1] Wells Fargo filed the Affidavit of Cynthia Bennett-Parks ("WF Aff.") on November 16, 2018 in support of its Motion for Summary Judgment.  [Doc. 55-10]

[2] The deposition transcripts of Airport Mini Mall, LLC ("Airport Depo."), Yes Assets, LLC ("Yes Depo."), Jerome C. Yeh ("Jerome Yeh Depo."), Jenny Yeh ("Jenny Yeh Depo."), and Donald Yeh ("Donald Yeh Depo.") were filed on November 16, 2018.  [Doc. 58, Doc. 59, Doc. 60, Doc. 61, and Doc. 62]  Portions

identified Defendants' accounts that were subject to the garnishment action, the balances in these accounts were at or near zero given Defendants' purposeful withdrawals.  WF Aff. ¶ 45.

Neither Wells Fargo's delay in locating Defendants' accounts nor Defendants' purposeful withdrawals from the accounts changed the legal requirement under the Georgia garnishment statute that Wells Fargo pay to the state court the amount in Defendants' accounts *on the date of service, plus five days. See* O.C.G.A. § 18-4-4(a). Wells Fargo complied with the Georgia garnishment statute and made the legally required payment to the state court on or about June 23, 2017.  WF Aff. ¶¶ 43-44 and Ex. 16.

Defendants argue that Wells Fargo was not required to make the payment to the state court when it answered the garnishment because the balances in Defendants' accounts were at or close to zero. This argument is directly contrary to the plain language of the Georgia garnishment statute. Again, the amount Wells Fargo was required to pay (and the amount Wells Fargo paid) was calculated based upon the Georgia garnishment statute – the amount in the accounts on the date of service, plus five days. Thus, Defendants' argument that Wells Fargo should not

---

of these transcripts which are cited within this Opposition are attached hereto as Exhibits A ("Airport Depo."), B ("Yes Depo.") C ("Jenny Yeh Depo."), D ("Jerome Yeh Depo."), and E ("Donald Yeh Depo.").

have made the payment to the state court is directly contrary to the Georgia garnishment statute.

As such, Defendants' characterization of Wells Fargo's payment to the state court in their Motion as *voluntary* is plainly wrong. A voluntary payment must be exactly that – *voluntary*. Wells Fargo's payment to the state court was legally required by law, and a payment that is compelled by law cannot by its very nature be voluntary. For this reason alone, Defendants' Motion for Summary Judgment as to Wells Fargo's equitable claims, unjust enrichment and money had and received, fails from the start.

Defendants' Motion for Summary Judgment on Wells Fargo's breach of contract is equally without merit. Defendants concede that the relationship between themselves and Wells Fargo was governed by the Account Agreement.[3] *See* Brief in Support of Motion [Doc. 63-1, pp. 17-19] (acknowledging and citing to provisions of the Account Agreement). Defendants do not dispute the plain language of the Account Agreement which provides that Wells Fargo may charge Defendants' accounts in connection with a garnishment and may overdraft the

---

[3] During the relevant time period, Defendants' accounts were governed by certain Business Account Agreements and Consumer Account Agreements. *See* WF Aff. ¶¶ 29-31 and Exs. 11-14. As the language relating to garnishments and overdrafts is identical in all of these Agreements, the Agreements are referred to herein as the "Account Agreement."

Defendants' accounts if Defendants do not have sufficient funds to pay all transactions. Defendants' *only* defense to Wells Fargo's breach of contract claim is that Wells Fargo's initial failure to locate the Defendants' accounts was a "material" breach of the Account Agreement that rendered such Agreement unenforceable. *See* Brief in Support of Motion [Doc. 63-1, pp. 17-19] .

This argument is factually and legally flawed. Wells Fargo did not breach the Account Agreement. In fact, it fully complied with the Account Agreement regarding the processing of the garnishment action and charging Defendants' accounts. If Wells Fargo's failure to initially identify Defendants' accounts when it was served with the garnishment action is a "breach" of the Account Agreement, such "breach" is not a "material breach" of the Account Agreement that waives Defendants' performance under such Agreement. Moreover, Defendants' "material breach" argument is directly contrary to Defendants' choice to continue their contractual relationship with Wells Fargo after learning of the debits to their accounts and their failure to ever assert any claim against Wells Fargo in this action or otherwise. In fact, Defendants have admitted that *they have suffered no damages as a result of Wells Fargo's actions in this case*. *See* Defendant's Disclosures. [Doc. 56, p. 6]  Defendants are simply trying to "create" a post-hoc "material" breach in an effort to avoid their legal responsibility to repay the amount

Wells Fargo paid to the state court on Defendants' behalf. For all these reasons, the Court should deny Defendants' Motion for Summary Judgment on the breach of contract claim.

## **LEGAL ARGUMENT**

I.   **The Court Should Deny Defendants' Motion for Summary Judgment as to the Unjust Enrichment and Money Had and Received Claims as Their Only Legal Theory Supporting Such Motion, Voluntary Payment, Fails as Matter of Law.**

Defendants' only argument in support of their Motion for Summary Judgment as to Wells Fargo's unjust enrichment and money had and received claims is that the voluntary payment statute, O.C.G.A. § 13-1-3, prohibits recovery on such claims. Defendants' voluntary payment doctrine argument fails. Wells Fargo's payment to the state court in the garnishment action on June 23, 2017 was not "voluntary." The Georgia garnishment statute required that Wells Fargo make the $312,829.00 payment, representing the amount in Defendants' accounts on the date of service, plus five days thereafter, WF Aff. ¶ 44, to the state court. *See* O.C.G.A. § 18-4-4(a). Thus, as Wells Fargo was under a legal obligation to make the payment to the state court, the voluntary payment doctrine simply does not apply.

**A.    As Wells Fargo's Payment to the State Court was Required by Law, it Was Not "Voluntary."**

"A *voluntary* payment is one made by a mere *volunteer* who pays money to another while under no legal obligation to do so or compelled to preserve some right or property of his own thereby."  *Cloud v. Bagwell*, 83 Ga. App. 769, 773, 64 S.E. 921, 925 (1951) (emphasis added); *see also Southern Mut. Church Ins. Co. v. ARS Mechanical, LLC*, 306 Ga. App. 748, 751-52, 703 S.E.2d 363, 366 (2010) ("[W]hen a payment is made *without a contractual or legal obligation to pay* it, the payment is *voluntary . . . .*") (emphasis added). Wells Fargo was not a "mere volunteer" in the garnishment action. The payment Wells Fargo made to the state court was not voluntary as it was legally required by the Georgia garnishment statute to make such payment.

The Georgia garnishment statute provides that "[a]ll obligations owed by the garnishee [Wells Fargo] to the defendant [Defendants] *at the time of service* of the summons of garnishment upon the garnishee [Wells Fargo] and all obligations accruing from the garnishee to the defendant throughout the garnishment period shall be subject to the process of garnishment." O.C.G.A. § 18-4-4(a) (emphasis added). The "garnishment period" for a financial institution such as Wells Fargo includes the five days after service. *See* O.C.G.A. § 18-4-4(c)(2). Thus, Wells Fargo was required to pay the amount in Defendants' accounts at the time it was

served with the garnishment action, plus five days, to the state court. There was nothing voluntary about such payment.

The fact that Defendants tried to avoid their judgment creditor's collection by withdrawing substantially all of the money from their accounts within a week of Luxottica/Oakley filing the garnishment action does not change or alter Wells Fargo's legal requirement to pay to the state court all of the money that was in Defendants' accounts throughout the garnishment period. *See* Airport Depo. 50:3-24, 57:9-14, 60:9-12 and Exs. 14-16; Yes Depo. 28:5-11, 31:4-15, 32:19-33:9 and Exs. 9-10; Jenny Yeh Depo. 35:9-12 and Ex. 7; Donald Yeh Depo. 16:3-9. The garnishment statute makes clear that "[n]o payment made by the garnishee [Wells Fargo] to the defendant [Defendants] or on his or her behalf . . . after the date of service of the garnishment upon the garnishee [Wells Fargo] *shall defeat the lien of such garnishment*." O.C.G.A. § 18-4-4(a) (emphasis added). Thus, Defendants' withdrawal of their funds from their accounts did not alter Wells Fargo's legal requirement to make the payment to the state court.

Moreover, Wells Fargo's initial failure to locate Defendants' accounts did not relieve it of its obligation to answer the garnishment action and make the legally required payment. Once Wells Fargo determined Defendants were customers of Wells Fargo, it was required by law to file the answer and pay the funds. *See*

*Mobile Paint Mfg. Co., Inc. v. Johnson*, 219 Ga. App. 299, 300, 464 S.E.2d 903, 905 (1995) ("Nor does the fact that NationsBank was unable to locate the account relieve the bank from its responsibilities under the garnishment statutes."); *Wachovia Bank of Georgia, N.A. v. Unisys Fin. Corp*., 221 Ga. App. 471, 474, 471 S.E.2d 554, 557 (1996) (holding that bank was required to strictly comply with Georgia garnishment statute). Thus, as Wells Fargo's payment to the state court was required by the Georgia garnishment statute, it was not a voluntary payment. For this reason alone, the Court should deny Defendants' Motion for Summary Judgment as to Wells Fargo's unjust enrichment and money had and received claims.

### B.   The Voluntary Payment Statute Does Not Apply to Wells Fargo's Payment to the State Court.

The voluntary payment statute at O.C.G.A. § 13-1-13 does not apply to Wells Fargo's payment.  In addition to the payment not being "voluntary" (as explained above) the specific requirements of this statute simply cannot be met. This statute provides that the doctrine does not apply if there is "artifice, deception, or fraudulent practice used by the other party." O.C.G.A. § 13-1-13. And, the statute further provides that the doctrine does not apply if the payment is made "under an urgent and immediate necessity therefor." *Id.* As both of those

circumstances exist in this case, Defendants' attempted application of this statute cannot support Defendants' Motion as to the two equitable claims.

First, without dispute, Defendants admit that they knew of the garnishment action sometime on or after April 21, 2017 and, upon advice of their counsel, went to Wells Fargo to withdraw all of their money to circumvent the legal process of the garnishment action. *See* Airport Depo. 41:13-42:0 and Ex. 13, 80:1-12, Ex. 13; Yes Depo. 25:16-26:8 and Ex. 8; Jenny Yeh Depo. 36:20-37:2, 53:1-10. [4] Defendants are presumed to know the law (and they received advice of counsel), thus Defendants are charged with the knowledge that withdrawing the funds from their accounts would not nullify Wells Fargo's legal obligation to pay all monies in their accounts on the day of service, plus five days. *See, e.g., Ghertner v. Solaimani*, 254 Ga. App. 821, 825, 563 S.E.2d 878, 882 (2002) ("parties are presumed to know the law"); *Musgrove v. Musgrove*, 213 Ga. 610, 611, 100 S.E.2d 577, 579 (1957) ("Neither can one plead ignorance of the law, which he is presumed to know."). Thus, Defendants knew they were acting furtively when they

---

[4] Whether Defendants knew that Wells Fargo knew about the garnishment action is irrelevant. Defendants knew of the garnishment action and knew that Wells Fargo was a garnishee. Defendants' actions in withdrawing substantially all of the monies from their accounts on or before May 1, 2017 shows that they knew that Wells Fargo could freeze their accounts or pay the money in their accounts to the court in the garnishment action. It was for that very reason that their lawyer recommended they make the withdrawals.

made the withdrawals from their accounts within a week after the garnishment action was filed. This fact is further supported by Defendants' acknowledgment that they used the withdrawn funds for their benefit and that they agree that if any monies are returned by Luxottica/Oakley if their appeal is successful, such funds *would belong to Wells Fargo.* Airport Depo. 49:3-7, 59:1-5, 61:10-18; Yes Depo. 27:6-16, 32:4-8, 33:14-20; Donald Yeh Depo. 16:7-9; Jenny Yeh Depo. 38:17-39:8.

Second, without dispute, Wells Fargo's payment to the state court in June 2017 in the amount of $312,829.00 was made under an "urgent and immediate necessity" as Wells Fargo made such payment *after a default judgment had been entered against it* in the garnishment action. Wells Fargo was served with the garnishment action on April 21, 2017. WF Aff. ¶ 41. Defendants' statements in the Brief in Support [Doc. 63-1, pp. 15-16] that Luxottica/Oakley's attorneys did not attempt to enter a default judgment or seek any enforcement of the garnishment action is simply false. When Wells Fargo filed its answer on June 23, 2017 and made the legally required payment to the state court, without dispute, a default judgment had been entered against Wells Fargo in the garnishment action. *See* Certified Copy of Default Judgment filed on June 9, 2017 attached hereto as Exhibit F. On June 23, 2017, Wells Fargo filed its answer, made the legally required payment to the state court and moved the state court to open default by the

deadline prescribed by the garnishment statute.  *See* WF ¶ Aff. 43; O.C.G.A. § 18-4-22 (statute setting forth when default will be entered); O.C.G.A. § 18-4-24 (statute setting forth the timing and procedure for modifying a default judgment). And, if Wells Fargo did not seek relief from the default judgment entered in the garnishment action and make the legally required payment at that time, the default judgment against Wells Fargo would have stood. *See* O.C.G.A. § 18-4-24; *see also W. Ray Camp, Inc. v. Cavalry Portfolio Serv., LLC*, 308 Ga. App. 597, 600, 708 S.E.2d 560, 563 (2011) (affirming the denial of a modification of a default judgment in a garnishment action when garnishee did not seek to modify the default judgment within the sixty day statutory period). Defendants knew of this default judgment. In March 2018 (in connection with discovery in this action) Wells Fargo produced copies of the documents Wells Fargo filed in the garnishment action to obtain relief from such judgment.  *See* Declaration of Julie A. Wood at Exhibit G and Exhibit 1 thereto (attaching documents WF 512 -  WF 526 produced in this action relating to Wells Fargo's moving to open the default judgment). Thus, Defendants' representation to the Court that there was no urgent and immediate necessity for Wells Fargo's legally required payment to the state court is again, wrong.

**C.    Defendants Cannot Rely on the Voluntary Payment Doctrine to Circumvent the Court's Balancing of the Equities in Evaluating Wells Fargo's Equitable Claims.**

As set forth fully in Wells Fargo's Memorandum of Law In Support of Its Motion for Summary Judgment [Doc. 55-1, pp. 21-25], Wells Fargo is entitled to summary judgment on its unjust enrichment and money had and received claims. Without dispute, Defendants were unjustly enriched when they made over $300,000.00 of withdrawals from their accounts, used such money for their benefit, and then received a second benefit via the reduction of the Luxottica/Oakley judgment by over $312,829.00. In Defendants' Motion, Defendants argue that the Court should not balance the equities to determine whether they should retain this windfall.  Instead, Defendants urge the Court to find that Wells Fargo's payment to the state court was voluntary and thus no balancing of the equities is necessary. *See* Defendants' Memorandum [Doc. 63-1, pp. 12-13]. However, as explained above, Wells Fargo's payment was not voluntary and thus the Court must evaluate Wells Fargo's unjust enrichment and money had and received claims based upon the law and the undisputed facts which requires the Court to determine if Defendants' retention of the windfall would be unjust and inequitable. As more fully stated in Wells Fargo's Memorandum of Law [Doc. 55-1, pp. 21-25], upon a full evaluation of the applicable law and undisputed facts, including the balancing

of equities, it is clear that Wells Fargo, not Defendants, is entitled to summary judgment on these equitable claims.

### D. Defendants' Argument Regarding the Meanings of "Overdraft" and "Overdraft Protection" is Misplaced and Irrelevant.

In a last ditch effort to support its legally flawed voluntary payment theory, Defendants try to confuse two distinct concepts set forth in the Account Agreement: (1) overdraft and (2) overdraft protection. As the Account Agreement makes clear, an "overdraft" is "a negative balance in [the] account." WF Aff. ¶ 39. And, "overdraft protection" is an optional service in which a customer may enroll whereby Wells Fargo would "transfer/advance available funds in [the] linked account(s) to [the] checking account when needed to cover your transactions."  WF Aff. ¶¶ 29-31 and Ex. 11, p. 19, Ex. 12, p. 22, Ex. 13, p. 20, and Ex. 14, p. 22. Without dispute, when Wells Fargo made the legally required payment to the state court in June 2017, Defendants' accounts were at or near a zero balance.  Airport Depo. 63:22-64:4, 67:5-7; Yes Depo. 41:7-11; WF Aff. ¶ 45. When Wells Fargo made the payment to the state court, Wells Fargo charged Defendants' accounts for the amount of the payment made in the garnishment action as explicitly permitted by the Account Agreement. *See* WF Aff. ¶ 37. ("If we incur any fees or expenses . . . due to responding to a legal process [including garnishments] related to your account, we may *charge* these costs to any account you maintain with us.")

(emphasis added). When Wells Fargo charged Defendants accounts for the amounts paid to the state court (as permitted by the Account Agreement), the charges created negative balances in Defendants' accounts, or "overdrafts." Airport Depo. 63:22-64:4, 67:5-7; Yes Depo. 41:7-11; WF Aff. ¶ 45. Wells Fargo initiated this action to recover the amount of these "overdrafts." WF Aff. ¶ 46. The statements and arguments in Defendants Memorandum regarding "overdraft protection" are simply irrelevant to this action.[5]

What Defendants appear to be arguing in trying to confuse these two distinct concepts is that Wells Fargo should not be able to create overdrafts in Defendants' accounts to make the payment to the state court in the garnishment action. However, the creation of the overdrafts has absolutely nothing to do with whether Wells Fargo was legally required to make the payment to the state court.[6] Thus, as explained above, Defendants' attempt to use the voluntary payment doctrine to turn Wells Fargo's initial failure to locate Defendants' accounts and Defendants

---

[5] A review of the portions of the transcript of Wells Fargo's representative cited by Defendants in the Memorandum in Support [Doc. 63-1, pp. 12-14] clearly indicates that Wells Fargo's representative is referring to and explaining "overdraft protection." *See* Deposition of Timothy Merck 49:22-58:23. Defendants have filed the transcript of this deposition provisionally under seal.

[6] As set forth in Wells Fargo's Memorandum of Law [Doc. 55-1, pp. 8-10], Wells Fargo had the legal right to charge Defendants' accounts in connection with the garnishment action and had the legal right to create and seek to recover overdrafts in the accounts.

deliberate attempt to circumvent the garnishment process into a $312,829.00 windfall fails and the Court should deny Defendants' Motion (and grant Wells Fargo's parallel Motion) as to the two equitable claims.

## II.   The Court Should Deny Defendants' Motion for Summary Judgment as to the Breach of Contract Claim.

Notably, Defendants do not dispute that the Account Agreement governs the Defendants' accounts. [Doc. 63-1, pp. 16-17] As set forth in Wells Fargo's Memorandum of Law [Doc. 55-1, pp. 3-8], Defendants signed a signature card or agreement whereby they agreed to be bound by the applicable account agreement. And, without dispute, the Account Agreement is the account agreement governing the accounts for the time period in question in this case. WF Aff. ¶¶ 29-31, Exs. 11-14. Defendants even attach the Account Agreement to their Motion and cite to it in support of their Motion.  [Doc. 63-1, p. 17] Thus, Defendants acknowledge that the Account Agreement is a contract governing the relationship between Wells Fargo and Defendants.

In their Motion, Defendants also do not dispute (and in fact, they ignore) the unambiguous language in the Account Agreement stating if Wells Fargo "incur[s] any fees or expenses . . . due to responding to a legal process [including a garnishment] related to your account, we may charge these costs to any account you maintain with us." WF Aff. ¶ 37. Defendants also ignore the unambiguous

language in the Account Agreement that provides that Wells Fargo may create an overdraft "if the available balance in your account is not enough to pay all of your transactions."  WF Aff. ¶ 38. And, Defendants do not refer to the provision in the Agreement providing that Defendants are required to make a deposit or transfer "promptly to return your account to a positive balance." WF Aff. ¶ 39. As Defendants never made any deposits into their accounts once the accounts were overdrawn (*see* Airport Depo. 66:25-67:5, 68:1-4; Yes Depo. 41:7-11; Jerome Yeh Depo. 33:21-25; Jenny Depo. 46:11-13; Donald Yeh Depo. 19:25-20:6), Defendants  breached the Account Agreement.

## A.     Wells Fargo Did Not Breach the Account Agreement.

Defendants' *only* defense to Wells Fargo's breach of contract claim is that the Account Agreement is unenforceable because Wells Fargo *materially* breached the Agreement. Though unclear, it appears that the contractual provision that Defendants assert Wells Fargo breached states in pertinent part:

> Except to the extent we fail to exercise 'ordinary care' or to comply with the Agreement, you agree to indemnify and hold us harmless from all claims, demands, losses, liabilities, judgments, and expenses (including attorneys' fees and expenses) arising out of or in any way connected with our performance under the Agreement.

[Doc. 63-1, p. 18]

Defendants attempt to argue that Wells Fargo's initial failure to locate Defendants' accounts once it was served with the garnishment action is a breach of this provision. However, it is clear from the unambiguous language in this provision that this is an indemnification provision and does not govern Wells Fargo's actions in attempting to locate Defendants' accounts in response to a legal process such as a garnishment action. Moreover, as the Complaint makes clear, Wells Fargo has not asserted an indemnification claim against Defendants for the overdraft amounts, but instead has asserted a breach of contract claim against Defendants for their failure to deposit monies into their accounts once the accounts were overdrawn.

To that end, Wells Fargo fully complied with the Account Agreement as it relates to its handling of the garnishment action and charging Defendants' accounts accordingly. The specific provision in the Agreement relating to the parties' rights and duties as it relates to garnishments states in full:

> **How do we handle legal process?**
>
> Legal process includes any levy, garnishment or attachment, tax levy or withholding order, injunction, restraining order, subpoena, search warrant, government agency request for information, forfeiture or seizure, and other legal process relating to your account.

> We will accept and act on any legal process we believe to be valid, whether the process is served in person, by mail, by electronic notification, or at any banking location.
>
> If we incur any fees or expenses (including attorney's fees) due to responding to legal process related to your account, we may charge these costs to any account you maintain with us.

WF Aff. ¶ 37 and Ex. 11, p. 11, Ex. 12, p. 11, Ex. 13, p. 13, and Ex. 14, p. 13.

Nothing in this section requires Wells Fargo to locate an account holders' account within a certain time frame when responding to a legal process such as a garnishment. Wells Fargo clearly states that it will "accept and act on any legal process we believe to be valid." And, Wells Fargo has the contractual right to charge any costs it incurs when responding to the legal process. As Wells Fargo fully complied with the Account Agreement as it relates to the processing of the garnishment, and the Account Agreement clearly set forth the parties rights and duties as it relates to garnishment and overdrafts, Defendants cannot nullify the entire Account Agreement because Wells Fargo did not initially locate Defendants' accounts upon service of the garnishment action.

Moreover, though Defendants focus on the fact that Wells Fargo did not initially locate Defendants' accounts when it was served with the garnishment action, Defendants have admitted that *they have suffered no damages* as a result of any delay in Wells Fargo's locating the accounts. *See* Defendant's Disclosures [Doc.

56, p. 6] (acknowledging that they are not alleging any damages at this time). Having admitted they have suffered no damages for Wells Fargo's actions, Defendants cannot now assert that Wells Fargo's delay in locating the accounts was a breach of the Account Agreement. For all of these reasons, the Court should deny Defendants' Motion for Summary Judgment as to the breach of contract claim.

## B.      Any Attempt by Defendants to Characterize Wells Fargo's Initial Failure to Locate Defendants' Accounts as a "Material Breach" Fails as a Matter of Law.

As stated above, Wells Fargo's initial failure to locate Defendants' accounts was not a breach of the Account Agreement.  In any event, to the extent such initial failure could be considered an incidental breach to the Account Agreement, such breach is – as a matter of law – not a "material" breach that would somehow make the Account Agreement unenforceable.

Georgia law is clear that "*one injured* by a breach of a contract has the *election* to rescind or continue under the contract and recover damages for the breach." *Forsyth County v. Waterscape Serv., LLC*, 303 Ga. App. 623, 633, 694 S.E.2d 102, 111 (2010) (quotations and citations omitted) (emphasis added). "[T]o justify rescission, there must be a material nonperformance or breach by the opposing party." *Id.*  "In order to trigger the right to rescission, the act failed to be performed must go to the root of the contract." *Mayor & City of Douglasville v.*

*Hildebrand*, 175 Ga. App. 434, 436, 333 S.E.2d 674, 676 (1985) (quotations and citations omitted). "A breach is material when it is so substantial and fundamental as *to defeat the object of the contract* . . . . A breach which is incidental and subordinate to the main purpose of the contract does not warrant termination." *Waterscape*, 303 Ga. App. at 633, 694 S.E.2d at 111-12 (emphasis added).

First, Defendants' "material breach" argument fails as they acknowledge they were not injured by Wells Fargo's actions. Thus, no remedy is available for them for Wells Fargo's delay in locating Defendants' accounts. *See Norton v. Budget Rent A Car Sys., Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010) (listing "resultant damages" as an element of a breach of contract claim).  Notably, even if Wells Fargo obtains a judgment against Defendants on its claims asserted in this action, Defendants will be in the same position as when the garnishment action was filed in April 2017. At that time, Luxottica/Oakley had a judgment of over $1.9 million against Defendants. If Wells Fargo prevails on its claims in this action,  once again, Defendants will have the same total amount in judgments against them – just split between the remaining balance of the Luxottica/Oakley judgment and a judgment in favor of Wells Fargo.[7] Thus, any alleged "breach" by

---

[7]  The only increase in liability to Defendants will be for the payment of Wells Fargo's attorneys' fees (as permitted by the Account Agreement and

Wells Fargo did not injure Defendants in April 2017 and would not injure Defendants even assuming Wells Fargo prevails on its Motion for Summary Judgment. With no injury, under Georgia law, Defendants cannot belatedly elect to seek a remedy of rescission of the Account Agreement in attempt to avoid their own liability.

Second, the Account Agreement does not impose a duty on Wells Fargo to timely locate Defendants' accounts in response to a garnishment. The lack of any such duty does not permit Defendants to rescind the Agreement. A review of the lengthy Account Agreement reveals that the scope of such Agreement is comprehensive and covers a myriad of duties and rights of Wells Fargo and the customers, such as Defendants. There are provisions relating to arbitration, deposits, availability of funds, electronic banking, ATMs, stop payments and set offs, just to name a few. *See* WF Aff. ¶ 37 and Exs. 11-14. Thus, any attempt by Defendants to characterize Wells Fargo's failure to initially locate Defendants' accounts as a "material breach" going to "the root or essence of" the Account Agreement so as to "defeat [the Agreement's] central purpose" is contrary to common sense and applicable law.

---

governing law) in the garnishment action and having to pursue the judgment in this case.

Moreover, the Account Agreement specifically states that if one of its terms, such as the indemnification provision cited by Defendants, is determined to be invalid or not enforceable that such invalidity or enforceability "will not affect the enforceability or validity of the remaining terms of the Agreement." *See* WF Aff. ¶ 37 and Ex. 11, p. 2, Ex. 12, p. 2, Ex. 13, p. 2, and Ex. 14, p. 2. As such, Defendants cannot, by the very terms of the Account Agreement, claim that an alleged incidental breach by Wells Fargo of the indemnification provision nullifies the entire Agreement.

Finally, Defendants, contrary to Georgia law, never made a timely election to pursue rescission as a remedy for the alleged breach. *See Clower v. Orthalliance, Inc.*, 337 F. Supp.2d 1322, 1331 (N.D. Ga. 2004) (interpreting Georgia law) ("A party's right to pursue remedies for breach must be asserted promptly."). "If the [alleged] breach is material, the non-breaching party must choose one of two inconsistent rights; they may either allege a total breach, terminate the contract and bring suit, or honor the contract, declare only a partial breach, and recover those damages caused by that partial breach." *Id.* Defendants never made an election. They never even asserted a breach until they filed their defensive Motion for Summary Judgment on Wells Fargo's breach of contract claim. Instead, after learning that Wells Fargo made the legally required payment to the state court and

charged their accounts, Defendants continued to maintain their Wells Fargo accounts (which continued to be governed by the Account Agreements) until Wells Fargo closed them due to Defendants' breach of the Agreement. *See* Yes Depo. 35:19-36:6 and Ex. 13, 38:9-15 and Ex. 15, and 40:15-25 and Ex. 17; Airport Depo. 65:13-66:3 and Ex. 18, 69:10-22 and Ex. 20, and 71:13-21 and Ex. 22.  Such a failure to make an election by Defendants (and continuing to maintain accounts with Wells Fargo after the alleged breach), bars the Defendants from now asserting their "material breach" rescission remedy to avoid returning the $312,829.00 benefit to Wells Fargo.

## **CONCLUSION**

For all the reasons stated herein and in Wells Fargo Memorandum of Law in Support of Motion for Summary Judgment, the Court should deny Defendants' Motion for Summary Judgment.

Respectfully submitted this 12th day of December, 2018.

**PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ Julie A. Wood*
Nancy H. Baughan
Georgia Bar No. 042575
Julie A. Wood
Georgia Bar No. 023749

303 Peachtree Street, NE
Suite 3600
Atlanta, Georgia  30308
Telephone:  404-523-5300
Facsimile:  404-522-8409
E-mail: nbaughan@phrd.com
E-mail: jwood@phrd.com

*Counsel for Plaintiff Wells Fargo*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I certify that the foregoing document was prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Time New Roman and a point size of 14, and that the foregoing document does not exceed twenty-five pages as set forth in Local Rule 7.1 of the Northern District of Georgia.

This 12th day of December, 2018.

*/s/ Julie A. Wood*
Julie A. Wood

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically submitted the foregoing **<u>MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'</u> <u>MOTION FOR SUMMARY JUDGMENT</u>** to the Clerk of Court using the CM/ECF system which automatically sent e-mail notification of such filing to all attorneys of record.

> Daniel J. Huff
> A.J. Cheek
> Huff, Powell & Bailey, LLC
> 999 Peachtree Street, NE
> Suite 950
> Atlanta, Georgia 30309

This 12th day of December, 2018.

> */s/ Julie A. Wood*
> Julie A. Wood

5748724_1