IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,**<br><br>    Plaintiff,<br><br>v.<br><br>**AIRPORT MINI MALL, LLC, YES ASSETS, LLC, JEROME C. YEH, JENNY YEH, AND DONALD YEH,**<br><br>    Defendants. | **CIVIL ACTION FILE NO. 1:17-cv-04249-AT** |

<u>**WELLS FARGO'S REPLY BRIEF IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT**</u>

The Court should grant Wells Fargo's Motion for Summary Judgment [Doc. 55] (the "Motion") on its breach of contract and equitable claims. As a preliminary matter, Defendants filed their Opposition to the Motion [Doc. 73] outside the time period required under the Local Rules. As the Local Rules and controlling case law permit, the Court should deem the Motion unopposed. As such, the Court should grant summary judgment in Wells Fargo's favor as to all of Wells Fargo's claims.

Even if the Court were to consider Defendants' Opposition, the undisputed facts and applicable law clearly support the entry of summary judgment in Wells Fargo's favor. As to the breach of contract claim, Defendants do not dispute they

entered into a contract with Wells Fargo, nor do Defendants dispute they breached that contract and Wells Fargo was damaged by such breach. Instead, Defendants argue the voluntary payment doctrine prevents Wells Fargo from asserting a breach of contract and Wells Fargo's mistake of not initially locating Defendants' accounts entitles them to retain the windfall they received when they purposefully withdrew substantially all of the money from their accounts to circumvent a valid garnishment process. As explained herein, these arguments fail. Wells Fargo's payment to the court in the garnishment action was not a "voluntary payment" and Wells Fargo's mistake in initially locating Defendants' accounts does not relieve Defendants from their obligation to abide by the terms of the Account Agreement.

Regarding Wells Fargo's equitable claims, the undisputed facts show Defendants received a windfall. Defendants withdrew over $300,000.00 from their accounts in late April and early May of 2017 and used that money for their benefit. When Wells Fargo made its payment to the court, the Oakley judgment was reduced by $312,829.00. Thus, Defendants received a double benefit to the detriment of Wells Fargo and equity requires Defendants to return this windfall.

## I.  AS DEFENDANTS FILED THEIR OPPOSITION LATE, THE COURT SHOULD TREAT THE MOTION AS UNOPPOSED.

On November 16, 2018, Wells Fargo filed its Motion for Summary Judgment (the "Motion"). [Doc. 55] According to the Local Rules of the Northern

District of Georgia, Defendants' opposition to the Motion was due twenty-one days later, or on December 7, 2018. *See* LR 7.1B ("Any party opposing a motion shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than fourteen (14) days after service of the motion, except that in cases of motion for summary judgment the time shall be twenty-one (21) days after the service of the motion."). Defendants failed to file their response on or before December 7, 2018. On December 13, 2018, the clerk submitted the Motion to the Court. Because Defendants failed to file a timely response, the Court should treat the Motion as unopposed *See* LR 7.1B ("Failure to file a response *shall* indicate that there is no opposition to the motion." (emphasis added).

On December 18, 2018, ten days after the due date, Defendants filed a "Notice of Filing" and filed their Response Brief in Opposition to Plaintiff's Motion for Summary Judgment. [Doc. 73] On that same day, Defendants also filed another "Notice of Filing" and filed their Response to Plaintiff's Statement of Material Facts as to which There is No Genuine Issue to be Tried. [Doc. 74] Defendants did not seek leave to file the Opposition or the Response to the Statement of Facts prior to filing. Moreover, Defendants failed to acknowledge their late filing or give any reason or justification that their failure to timely file the Opposition should be excused for "excusable neglect."

As the Local Rules make clear, the Court should refuse to consider the untimely filed Opposition. *See* LR 7.1B. The Eleventh Circuit Court of Appeals has held a district court may treat a motion for summary judgment as unopposed if the responding party does not file a timely response. In *Simon v. Kroger Co.*, 743 F.2d 1544, 1546-47 (11th Cir. 1984), the Court affirmed the district court's conclusion that a motion for summary judgment was unopposed as the opposition was filed after the deadline and the opposing party did not seek an extension of time or leave to file the response late. Also, in *McDuffie v. Broward County, Florida*, 654 Fed. Appx. 408, 412 (11th Cir. 2016), the Court affirmed a district court's striking of a response to a motion for summary judgment as the response was filed eleven days late, without leave of court, and without any argument as to why the late filing should be excused due to excusable neglect.

District courts in this district have followed LR 7.1B and the controlling authority in this Circuit and held a court may treat a motion for summary judgment as unopposed if the opposing party files its opposition outside the time period required by LR 7.1B. *See, e.g., McCloud v. HSBC Bank USA NA*, Civil Action No. 1:12-CV-3301-CAP-ECS, 2014 WL 11455989, *4 (N.D. Ga. Aug. 14, 2014) (holding motion for summary judgment was unopposed as response to the motion was filed outside the time period permitted by LR 7.1B); *Mangham v. Westin Hotel*

*Mgmt., LP*, 1:16-cv-3725-WSD, 2017 WL 4540712, *5 (N.D. Ga. Oct. 11, 2017) (declining to consider an untimely response and supporting materials to a motion for summary judgment that was not filed timely pursuant to the local rules); *see also Standing Order: Guidelines to Parties and Counsel in Cases Proceeding Before the Honorable Amy Totenberg* ("Standing Order"), p. 8 (specifically informing pro se parties that LR 7.1B provides "if the deadline for a response to a motion passes without a response being filed, the motion is treated as unopposed").

Without dispute, Defendants filed their Opposition to the Motion ten days late. Defendants did not seek leave to file the late Opposition, nor did Defendants give any reason why the Court should consider the late filing. As such, the Court should deem Wells Fargo's Motion unopposed and deem each of Wells Fargo's facts set forth in its Statement of Material Facts [Doc. 55-9] admitted. *See* LR 56.1B(2)(a)(2) ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence . . . ; (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B(1)"); *see also Standing Order,* p. 8 ("under Local Rule 56.1, NDGa, the failure by a respondent

to a motion for summary judgment to contest the movant's statement of material facts will be taken as an admission of those facts not objected to in respondent's statement"). As Defendants failed to timely respond to Wells Fargo's statement of material facts, the Court should deem all of Wells Fargo's material facts admitted.

## II. THE COURT SHOULD GRANT THE MOTION AS TO THE CONTRACT CLAIM.

Defendants do not dispute the Account Agreement was a contract that governed the relationship between Wells Fargo and Defendants. Nor do Defendants dispute they failed to deposit money into their accounts after there were overdrafts in their accounts – a clear breach of the Account Agreement. And, finally, Defendants do not dispute Wells Fargo sustained damages as a result of Defendants' breach. Thus, as a matter of undisputed fact, Wells Fargo has established the elements of its contract claim and is entitled to summary judgment.

### A. Voluntary Payment Doctrine Cannot Defeat the Contract Claim.

Defendants' argument that the voluntary payment doctrine prevents Wells Fargo from recovering on the contract claim or its equitable claims fails as a matter of law. As fully explained in Wells Fargo's Opposition to Defendants Motion for Summary Judgment [Doc. 69, pp. 6-16], Wells Fargo's payment to the state court

in the garnishment action was legally required and thus was not "voluntary."[1] In fact, in response to Wells Fargo's Statements of Undisputed Fact (Nos. 52 and 53), Defendants *admit* that "Wells Fargo was legally required to make the garnishment payment." [Doc. 74, p. 40]

In the Opposition, Defendants imply (with no legal support) that Wells Fargo's failure to initially file an answer in the garnishment action somehow nullified the Agreement or made Wells Fargo's payment to the state court "voluntary." Without dispute, Wells Fargo did not file a timely answer and a default judgment was entered. However, the garnishment statute provides a mechanism for a garnishee, such as Wells Fargo, to modify the default judgment, file its answer and make the legally required payment as long as the garnishee follows the procedures in the statute. Wells Fargo fully complied with this

---

[1] In the Opposition, [Doc. 69] Defendants rely upon arguments in the Memorandum of Law in Support of Motion for Summary Judgment regarding the voluntary payment doctrine. [Doc. 63-1, pp. 15-17] In the Memorandum, Defendants misrepresent to the Court that there was no urgent or immediate necessity for Wells Fargo to make the payment to the court as Oakley's attorneys "did not attempt to enter a default judgment or seek any enforcement of the Garnishment . . . ." [Doc. 63-1, p. 15] In the Opposition, Defendants now concede (without explaining their prior misstatement) that a default judgment had been entered against Wells Fargo when it made the legally required payment. [Doc. 73, p. 5] As such, Defendants' argument in the Memorandum that there was no "urgent or immediate necessity" is without merit and should be disregarded.

remedial procedure and the state court modified the default judgment in the Garnishment Action. *See* O.C.G.A. § 18-4-24. Contrary to Defendants' implication, nothing in the Georgia garnishment statute imposes any additional liability on a garnishee who properly uses the remedial measures in the statute to modify a default judgment. Thus, Wells Fargo's payment to the state court (representing the amount in Defendants' accounts on the date of service, plus five days), made in conjunction with the filing of its answer and the motion to modify the default judgment, was legally required by Georgia law. *As the payment was compelled by law (and Defendants admit it was legally required), it was not voluntary.*

### B. Defendants' Attempt to Nullify the Agreement Due to Wells Fargo's Initial Failure to Locate Defendants' Accounts Fails.

Defendants focus on Wells Fargo's failure to initially locate their accounts and argue that this failure completely nullifies the Account Agreement and any obligations that Defendants may have had thereunder. However, as fully explained in Wells Fargo's Opposition to Defendants Motion for Summary Judgment, [Doc. 69, pp. 17-24] Wells Fargo's initial failure to find the accounts did not render the Account Agreement unenforceable. Specifically, the Agreement did not require Wells Fargo to locate Defendants' accounts within any certain time period and Wells Fargo fully complied with the terms of the Agreement as it related to the processing of garnishments. Thus, Wells Fargo did not breach any provision of the

Agreement. And, *Defendants concede they suffered no damages* as a result of Wells Fargo's failure initially to locate the accounts. [Doc. 56, p. 6] As Wells Fargo fully complied with the Agreement and Defendants have sustained no damages, Defendants cannot rely upon a mistake made by Wells Fargo's employees in failing to locate their accounts – a mistake that actually benefited Defendants – to nullify the Agreement and Defendants' obligations thereunder.

Defendants' reliance on O.C.G.A. § 11-4-103(a) in an attempt to nullify the Account Agreement is misplaced. Section 11-4-103(a) prevents a bank from using an account agreement to disclaim liability for its lack of ordinary care.[2] Nothing in

---

[2] Defendants cite to a definition of "ordinary care" in Article 3 of the Commercial Code which governs negotiable instruments. O.C.G.A. § 11-3-103(a)(7). This definition relating to "negotiable instruments" in Article 3 does not support Defendants' defenses to the breach of contract claim in this action. "Negotiable instruments" are specifically defined in Article 3 and such definition does include or relate to legal process in garnishment actions. *See* O.C.G.A. § 11-3-104 (defining "negotiable instrument"); *Crolley v. Haygood Contracting, Inc.*, 201 Ga. App. 700, 702, 411 S.E.2d 907, 909 (1991) (holding Article 3 only applies to "negotiable instruments" and as contract was not a negotiable instrument, Article 3 did not apply to the interpretation of contract); *100 Lakeside Trail Trust et al. v. Bank of America, N.A.*, 342 Ga. App. 762, 768, 804 S.E.2d 719, 724 (2017) (holding the definition of "negotiable instruments" in Article 3 did not apply to bank's petition for equitable reformation of a security deed based on mutual mistake because a "security deed" is not a "negotiable instrument").

the Account Agreement provides that Wells Fargo was disclaiming any *liability*[3] for failing to exercise ordinary care regarding garnishment actions. The Agreement simply states that Wells Fargo may charge the customers' accounts upon receipt of any legal process Wells Fargo believes to be valid. This is what Wells Fargo did.

Notably, nothing in O.C.G.A. § 11-4-103(a) (or interpreting case law)[4] supports the retention of a substantial benefit by a customer when a bank makes a mistake in failing to initially locate a customer upon service of a garnishment action. Defendants cite no authority that would allow a customer to retain a windfall it received by quickly withdrawing funds from its account simply because the bank was delayed in locating its account (especially when the customer was trying to circumvent the garnishment process). The lack of authority is not surprising as public policy would not support a legal principle that encouraged account holders to race to the bank to remove funds to avoid legal process.

---

[3] Wells Fargo never disclaimed any *liability* as it relates to processing the garnishment action. As Defendants have asserted no claims against Wells Fargo and have admitted that they sustained no damages, it is undisputed that Wells Fargo has not disclaimed any liability.

[4] Defendants' citation to *Eason Publications, Inc. v. NationsBank of Georgia*, 217 Ga. App. 726 (1995) is also misplaced. *Eason* addressed a bank's duty to exercise ordinary care in processing negotiable instruments under Articles 3 and 4 of the UCC as adopted in Georgia. Nothing in *Eason* supports the imposition of duties or establishes the breach of any duties under Title 18 of the Georgia Code governing garnishments. *See* O.C.G.A. § 18-4-1 *et seq*.

Citing to O.C.G.A. § 11-4-103(a) again, Defendants also argue that this statute also provides that the "parties may determine by agreement the standards by which the *bank's responsibility* is to be measured if those standards are not *manifestly unreasonable*" (emphasis added). Defendants argue the Account Agreement is manifestly unreasonable as it relates to Wells Fargo's responsibility in responding to garnishment actions. However, nothing in the Account Agreement relating to the "bank's responsibility" and garnishment actions is "manifestly unreasonable." The Account Agreement, instead, is very clear about the actions Wells Fargo may take in response to a legal process such as a garnishment, including charging a customer's account if the Wells Fargo "incur[s] any fees or expenses (including attorney's fees) due to responding to legal process related to your account." Defendants fail to make any showing why it is manifestly unreasonable for Wells Fargo to be able to charge their accounts for the legally required payment it made to the state court. Defendants were charged with knowledge of this provision and the Georgia garnishment statute and still choose to withdraw substantially all of their money from their accounts to circumvent the garnishment process. They cannot now argue that Wells Fargo should be prevented from recovering via the plain terms of the Agreement for the overdrafts that were created when Wells Fargo charged Defendants' accounts.

Moreover, nothing in O.C.G.A. § 11-4-103(a) requires Wells Fargo to find or freeze Defendants' accounts within a certain time period. Nothing in this Section requires a bank to include such notice requirements in the account agreements. And, Defendants have cited to no legal authority that would require a bank to provide notice of receipt of a summons of garnishment to a customer or to freeze accounts subject to garnishment within a certain time period. Thus, nothing in the Agreement relating to garnishments sets forth a manifestly unreasonable standard by which the bank's responsibility is to be measured. As such, this Section is completely irrelevant to the Court's decision on the contract claim.

As Defendants have admitted to the essential elements of Wells Fargo's breach of contract claim and all of Defendants' attempts to invalidate the Account Agreement fail as a matter of law, the Court should grant the Motion on this claim.

### III. THE COURT SHOULD GRANT THE MOTION AS TO THE UNJUST ENRICHMENT CLAIM.

The Court should grant the Motion as to the unjust enrichment claim as Wells Fargo conferred a benefit on Defendants and it would be unjust to allow Defendants to retain such benefit. *See Landcastle Acquisition Corp. v. First-Citizens Bank & Trust Co.*, 2017 WL 2813674, *3 (N.D. Ga. June 29, 2017) (listing elements of unjust enrichment claim). Defendants' argument that Wells Fargo conferred no benefit on them is contrary to the undisputed facts.

First, Defendants admit they used the money they withdrew for their benefit. Airport Depo. 59:1-5, 61:10-18; Yes Depo. 32:4-8, 33:14-20; Donald Yeh Depo. 16:7-9; Jenny Yeh Depo. 38:17-39:8. Defendants also concede this in the Opposition. [Doc. 73, p. 4] And, Defendants acknowledge the current balance on the Oakley Judgment is approximately $1.6 million and the $300,000.00 reduction is due to Wells Fargo's payment. Airport Depo. 40:9-24; Yes Depo. 27:6-16; Jenny Yeh Depo. 31:17-32:4.[5] In the Opposition, Defendants acknowledge the reduction, stating: "Technically, Defendants now have a 1.6-million-dollar verdict pending against them as opposed to a 1.9-million dollar verdict." [Doc. 73, p. 18]

In the Opposition, however, Defendants attempt to argue that this second benefit – the reduction in the judgment – is not *really* a benefit as "Defendants ultimately *believe* they are still liable for the full amount of the judgment as the judgment was against them, none of their assets have been paid towards the Oakley Judgment, and the money paid belonged to Wells Fargo." [Doc. 73, p. 16][6]

---

[5] The portions of the depositions cited herein are attached hereto as Exhibits A (Airport Mini), B (Yes Assets), C (Jenny Yeh) and D (Donald Yeh). All of these depositions were filed on November 19, 2018.

[6] In Defendants Response to Wells Fargo's Statement of Facts [Doc. 74, pp. 45-46] Defendants state their "belief" in different words when they state: "If the Oakley Judgment is overturned, Defendants could simply reimburse Wells Fargo the amount it paid." Thus, according to Defendants, Wells Fargo should simply
(footnote continued)

Notably, Defendants' "belief" that they are responsible for a $1.9 million judgment that has (without dispute) been reduced to $1.6 million is only supported by argument of counsel and to no citation of evidence. Also, even if Defendants were to attempt to aver to such "beliefs," the beliefs would not be admissible as it is well-settled that a party's "belief" is not evidence that can support or defeat a motion for summary judgment. *See Benson v. Solvay Specialty Polymers USA, LLC*, Civil Action No. 1:16-cv-04638-CAP-RGV, 2018 WL 5118615, n. 6 (N.D. Ga. July 3, 2018) ("[a] party's mere 'belief' [or] speculation is not based on personal knowledge and is not competent summary judgment evidence") (citations omitted). As such, the only evidence in the record is Defendants' admission that the current balance on the Judgment is approximately $1.6 million and the approximate $300,000.00 reduction is due to Wells Fargo's payment. As such, Defendants have received a double benefit that they should not be able to retain.

## VI.   THE COURT SHOULD GRANT THE MOTION AS TO THE MONEY HAD AND RECEIVED CLAIM.

Wells Fargo "generally can recover a payment mistakenly made when that mistake was caused by [its] lack of diligence or [its] negligence in ascertaining the

---

wait to see if Defendants would choose to reimburse Wells Fargo if the Oakley Judgment is overturned.  The law does not require Wells Fargo to wait and see if Defendants would make that voluntary choice.

true facts and the other party would not be prejudiced by refunding the payment- subject to a weighing of the equities between the parties by the trier of fact." *See Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 406, 349 S.E.2d 368, 373 (1986). In addition to their flawed "voluntary payment" argument, Defendants argue that the weighing of the equities favors permitting Defendants to keep the windfall of almost a third of a million of dollars because Wells Fargo made a mistake. According to Defendants, Wells Fargo's initial failure to locate Defendants' accounts should result in a net loss to Wells Fargo of the total amount of the Overdraft Balance ($300,573.96) and a net gain to Defendants in the same amount. The weighing of the equities does not support this outcome. Wells Fargo's mistake – which Defendants have admitted caused them no damage – does not entitle Defendants to keep this significant windfall. As such, the Court should grant the Motion as to this equitable claim.

Respectfully submitted this 31st day of December, 2018

**PARKER, HUDSON, RAINER & DOBBS LLP**

 /s/ Julie A. Wood
Nancy H. Baughan
Georgia Bar No. 042575
Julie A. Wood
Georgia Bar No. 023749

*Counsel for Plaintiff Wells Fargo*

303 Peachtree Street, NE, Suite 3600
Atlanta, Georgia 30308
Telephone: 404-523-5300
Facsimile: 404-522-8409
E-mail: nbaughan@phrd.com
E-mail: jwood@phrd.com

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing document was prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Time New Roman and a point size of 14, and that the foregoing document does not exceed fifteen pages as set forth in Local Rule 7.1 of the Northern District of Georgia.

This 31st day of December, 2018.

>*/s/ Julie A. Wood*
>Julie A. Wood

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **WELLS FARGO'S REPLY BRIEF IN SUPPORT OF WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which automatically sent e-mail notification of such filing to all attorneys of record.

                Daniel J. Huff
                A.J. Cheek
                Huff, Powell & Bailey, LLC
                999 Peachtree Street, NE
                Suite 950
                Atlanta, Georgia 30309

This 31st day of December, 2018.

                */s/ Julie A. Wood*
                Julie A. Wood