# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> AIRPORT MINI MALL, LLC, YES ASSETS, LLC, JEROME C. YEH, JENNY YEH, AND DONALD YEH, <br><br> Defendants. | CIVIL ACTION FILE NO. 1:17-cv-04249-AT |

**DEFENDANTS AIRPORT MINI MALL, LLC, YES ASSETS, LLC, JEROME C. YEH, JENNY YEH, AND DONALD YEH'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

COME NOW, Defendants Airport Mini Mall, LLC, Yes Assets, LLC, Jerome C. Yeh, Jenny Yeh, And Donald Yeh, and hereby file their Reply Brief in Support of their Motion for Summary Judgment, respectfully showing the Court as follows:

## INTRODUCTION

To successfully avoid summary judgment, the opposing party must designate specific facts, rather than conclusory allegations, that demonstrate that

there is a genuine issue that might affect the outcome of the suit. Here, Wells Fargo fails to demonstrate the existence of any genuine issue of material fact or to advance any persuasive argument against the entry of summary judgment. Instead, Wells Fargo attempts to paint a picture of conniving account holders taking advantage one of the nation's largest banks with conclusory allegations, and "facts" that are not material or properly supported in its LR 56.1 Statement. Wells Fargo was required to establish its breach of contract, unjust enrichment, and money had and received claims, but it simply fails to do so. Indeed, it merely repeats its allegations that it was bound by Georgia garnishment law and Defendants are bound by their account agreements with Wells Fargo ("Account Agreements") to repay Wells Fargo for its voluntary negligent payment. Wells Fargo's allegations against Defendants are, at best, allegations that the Defendants got lucky when Wells Fargo failed to freeze their accounts when it was served with the notice of the garnishment ("the Garnishment") and since Wells Fargo loosely complied with the applicable statutes, it should not lose out on the money it had to pay to avoid a levy of the full amount of a 1.9-million-dollar judgment against it. But any luck had by Defendants in the timing of their withdraws does not constitute an unjust enrichment or breach of contract for which Wells Fargo can recover.

Further, other than citing its own Account Agreement for the proposition that the Account Agreement grants Wells Fargo a very generous right to make payments on behalf of Defendants and demand repayment, which generally is not in dispute, Wells Fargo fails to show that it held up its end of the bargain by exercising the requisite degree of care when processing the Garnishment. There is simply no evidence that Defendants have been or stand to be unjustly enriched by Wells Fargo's payment towards the Garnishment or that Defendants breached an enforceable contract with Wells Fargo. Therefore, Defendants' summary judgment motions should be granted.

## STATEMENT OF FACTS

Pursuant to Fed. R. Civ. P. 10(c), Defendant relies on its Consolidated Statement of Material Facts as to Which There is No Genuine Issue to Be Tried ("Cons. Statement"), which is incorporated herein as if fully and completely set forth verbatim.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. WELLS FARGO HAS FAILED TO CREATE A MATERIAL QUESTION OF FACT AS TO ITS UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED CLAIMS.

Wells Fargo clings tight to the portion of the Georgia garnishment statute that provides "[a]ll obligations owed by the garnishee [Wells Fargo] to the defendant [Defendants] at the time of service of the summons of garnishment upon

garnishee [Wells Fargo] and all obligations accruing from the garnishee to the defendant throughout the garnishment period shall be subject to the process of garnishment" for the proposition that its payment was not voluntary. [Well Fargo Response Brief, Doc. No., p. 7; *see also O.C.G.A. § 18-4-4(c)(2)*.] Wells Fargo then suggests since its payment was not voluntary it would be unjust for Defendants to not repay Wells Fargo. The evidence, however, shows Wells Fargo's payment towards the Garnishment was the product of a host of voluntary decisions made by Wells Fargo in an attempt to remedy its negligent handling of Defendants' Garnishment Notice. As such, Wells Fargo cannot and should not recover from Defendants.

### a. WELLS FARGO HAS FAILED TO SHOW ITS GARNISHMENT PAYMENT WAS NOT VOLUNTARY.

Sixty-three days after being served with the Garnishment Notice, Wells Fargo voluntarily paid approximately $300,000 towards the Garnishment. O.C.G.A. § 13-1-13 bars Wells Fargo from recovering its voluntary payment because Wells Fargo paid the Garnishment with (1) all material facts are known, (2) the payment was not induced by misplaced confidence, artifice, deception or fraudulent practice on the part of the person to whom the payment was made, and (3) the payment was not made "under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property." *O.C.G.A. § 13-1-13*. "The party seeking to recover payment

bears the burden of showing that the voluntary payment doctrine does not apply." *S. Mut. Church Ins. Co. v. ARS Mech., LLC*, 306 Ga. App. 748, (2010) (quoting *Energy & Process Corp. v. Jim Dally & Assoc., Inc.,* 291 Ga. App. 772, 775(1) (2008); *Pew v. One Buckhead Loop Condo. Ass'n, Inc.,* 305 Ga. App. 456, 461 (2010). Wells Fargo has failed to show the voluntary payment statute does not apply to its payment made on behalf of accounts with insufficient funds.

As cited in Wells Fargo's Response Brief, "when a voluntary payment is made without a contractual or legal obligation to pay it, the payment is voluntary." [Wells Fargo Response Brief, Doc. No.69-1, p. 7, *citing Southern Mut. Church Ins. Co. v. ARS Mechanical, LLC*, 306 Ga. App. 748, 751-52 (2010).] Wells Fargo goes on to cite "no payment made by the garnishee [Wells Fargo] to the defendant [Defendants] or on his or her behalf…after the date of service of garnishment upon the garnishee [Wells Fargo] shall defeat the lien of such garnishment." *Id.*, Doc. No. 69-1, p. 8; *O.C.G.A. § 18-4-4(a)*. Combining these two provisions, Wells Fargo claims it was legally obligated to make the garnishment payment of $312,829.00 when it did. [Wells Fargo Response Brief, Doc. No. 69-1, p. 8.] Defendants do not disagree that a payment is considered voluntary when it is paid without a legal or contractual duty to do so, nor do they believe the withdraws eliminated Wells Fargo's duty

to answer the Garnishment Notice in compliance with Georgia garnishment law.

Defendants have consistently maintained that Wells Fargo had a duty to timely and appropriately respond to the Garnishment Notice within the statutorily required 15-day time period. *O.C.G.A § 18-4-10*. Undisputedly, Wells Fargo failed to comply with that requirement. Rather, Wells Fargo did not pay money towards the Garnishment until June 23, 2017. [Wells Fargo Response Brief, Doc. No.69-1, p. 11.] At that point, Wells Fargo's negligence landed it in default and it was tasked with getting itself out. Wells Fargo's Brief in Support of it Motion to Set Aside The Default Judgment, filed contemporaneously with its Garnishment Answer, attests that it made its payment in accordance with *O.C.G.A. § 18-4-24*,

> (a) When a default judgment is rendered against a garnishee under Code Section 18-4-21, 18-4-22, or 18-4-43, the plaintiff shall serve the garnishee, as provided in Code Section 9-11-4, or, when the garnishment is filed in a magistrate court, the plaintiff may serve the garnishee by using the constable of the magistrate court in the manner set forth in Code Section 9-11-4, with a copy of such default judgment. On a motion filed not later than 90 days from the date the garnishee was served with such default judgment, the garnishee may, upon payment of all accrued costs of court, have such default judgment modified so that the amount of such default judgment shall be reduced to an amount equal to the greater of $50.00 or $50.00 plus 100 percent of the amount by which the garnishee was indebted to the defendant *from the time of service of the summons of garnishment through and including the last day on which a timely garnishee answer could have been made* for all money or other property belonging to the defendant

> which came into the garnishee's hands from the time of service of the summons through and including the last day on which a timely answer could have been made and less any exemption allowed the defendant.

[Wells Fargo's Brief in Support of Motion for Relief, Doc. No. 69-8, *citing O.C.G.A. § 18-4-24* (emphasis added.).] According to this statute, which is the only statute Wells Fargo cites in its materials filed contemporaneously with its Garnishment Answer, Wells Fargo was to pay the amount held in Defendants' accounts from the day the Garnishment Notice was served [April 21, 2017] until the last day to answer the Garnishment Notice [May 6, 2017.]. *O.C.G.A. § 18-4-24*. Given that Defendants withdrew their funds seven days after the Garnishment Notice was served on Wells Fargo [April 28, 2017], *O.C.G.A. § 18-4-24*'s prescribed timeframe necessarily presented a scenario where there were varying balances held in Defendants' accounts during the *O.C.G.A. § 18-4-24* timeframe. Wells Fargo could have paid an amount different than $312,829.00 and still have had default reopened. *Id.* This alone is evidence that Wells Fargo's payment was calculated and voluntary.

Despite the reality that Wells Fargo made a payment following the entry of default, Wells Fargo's position throughout this case has been that it answered the Garnishment with the potential for a default judgment in mind. [*See* Wells Fargo's Initial Disclosures, Doc. No. 17.] In fact, Wells Fargo's corporate representative, answering questions from his attorney, testified:



[Deposition of Wells Fargo corporate representative, Timothy Merck, Doc. No. 40, with relevant portions attached hereto as Exhibit A, p. 98:5-13.] All of Wells Fargo's inconsistencies are not only evidence of negligence (and deceit) but evidence of the calculated and voluntary nature of its payment.

### b. ASSUMING THE VOLUNTARY PAYMENT DOCTRINE DOES NOT APPLY, EQUITY SIDES WITH DEFENDANTS.

Beyond the voluntary payment doctrine's bar of Wells Fargo's claims, a balancing of equities falls in Defendants' favor. Here, Wells Fargo's negligence was the sole reason Defendants were able to withdraw money from their accounts, the sole reason Wells Fargo went into default, and the sole reason Wells Fargo voluntarily paid money towards a garnishment that named Defendants and then initiated this litigation. On the other hand, Defendants' position has not substantially changed as a result of Wells Fargo's garnishment payment. Defendants have been able to utilize their own money, which they withdrew while

pursuing a legitimate appeal. To this day, Defendants have not experienced any fruits from the approximately $300,000 reduction in the verdict, and again, may well be required to pay the full 1.9-million-dollar verdict should their appeal prove to be unsuccessful. [*Id.*] Additionally, Defendants testified that they intend to return the money paid by Wells Fargo to Wells Fargo in the event of a successful appeal. [The 20(b)(6) Deposition of Airport Mini Mall ("Airport Depo."), relevant portions of which are attached hereto as Exhibit B, pp. 47: 19-25, 48: 1-2, 49: 1-7.] Under these circumstances, Wells Fargo can hardly say it has established an "indisputable right to recover money accidentally paid to a defendant." *Humphrey*, 2010 WL 11507841, at *4. Defendants, therefore, are entitled to summary judgment on Wells Fargo's unjust enrichment and money had and received claims.

## II. WELLS FARGO HAS FAILED TO CREATE A MATERIAL ISSUE OF FACT AS TO WHETHER IT MAY RECOVER UNDER A BREACH OF CONTRACT CLAIM.

In defending its breach of contract claim, Wells Fargo wholly ignores its statutory duty to exercise ordinary care and attempts to limit its contractual duty to one provision in its Account Agreements— the indemnification clause. Wells Fargo cannot escape its duty to exercise ordinary care via a contract clause any more than a doctor can escape her duty to comply with the standard of care. Furthermore, Wells Fargo cannot show that its interpretation of the

suggested interplay between its "legal order processing" and "over draft" provisions is anything but manifestly unreasonable.

### a. WELLS FARGO FAILED TO PROVE IT DID NOT MATERIALLY BREACH IT ACCOUNT AGREEMENTS.

Wells Fargo does not contest its statutory requirement to exercise ordinary care. O.C.G.A. § 11-4-103(3). Rather, Wells Fargo takes the position that the provision where its drafters chose to incorporate the statutory language does not apply to this case, because Wells Fargo sued Defendants for breach of contract rather than for indemnity. [Wells Fargo Response Brief, Doc. No.69-1, p. 17-18.] However, that is exactly what the bank is asking Defendants to do: indemnify Wells Fargo for the payments they made into state court as a result of the default judgment in pursuing the garnishment. *Douglas Asphalt Co. v. Georgia Dept. of Transp*, 319 Ga. App. 47, 49 (2012) (stating "[i]ndemnity" is the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit.) Wells Fargo is seeking indemnity even if they aren't suing Defendants under that theory in an attempt to avoid their own contract application. [Wells Fargo Response Brief, Doc. No. 69-1, p. 17-18.] Unfortunately for Wells Fargo, *O.C.G.A. § 11-4-103(3)* does not enumerate the provisions of a bank agreement or actions of a bank that necessitate an exercise of "ordinary care." Rather, it instills a duty on banks to exercise ordinary care in all its interactions with its account holders just as physicians must comply with the

requisite standard of care in all their interactions with a patient. *Spacemakers of America, Inc. v. SunTrust Bank*, 271 Ga. App. 335 (2005) (Declaring ordinary care in context of a bank that takes an instrument for processing for collection or payment is comparable to a "professional negligence" standard of care.) As professionals cannot contract around their standard of care requirements, Wells Fargo cannot by contract choose when it is required to act with ordinary care.

Next, Wells Fargo argues that even if it breached the contract, Defendants missed their opportunity to contest the breach because they did not rescind their contract and sue or continue to comply and sue for their loss. In support, Wells Fargo cites *Clower v. Orthalliance, Inc.*, which states if the employee *has knowledge of* the material breach and continues the contract and receives benefits under the contract, "the non-breaching party has ended its right to refuse to perform his part of the contract." *337 F. Supp. 2d 1322, 1332 (N.D. Ga. 2004)* (emphasis added). In citing *Luke v. McGuire Ins. Agency of Georgia, Inc.*, 133 Ga. App. 948, 953 (1975), the *Clower* court stated,

> [a]t the point in which [p]laintiffs realized that [d]efendant had breached its obligations under the [contract], [p]laintiffs possessed the right to elect one of two remedies: immediate termination of the contract or continuing the contract and seeking partial damages for the breach. In electing to continue performance under the contract, [p]laintiffs thereby lost the opportunity to maintain a suit for the benefits owed to it under their understanding of the original contract.

337 F. Supp. 2d at 1332 (N.D. Ga. 2004). Despite Wells Fargo's contention that Defendants should have known of a breach when they saw negative balances on their accounts, Defendants did not learn of the breach until this lawsuit was filed and Wells Fargo's failure to exercise ordinary care surfaced. Defendants were not aware of Wells Fargo's material breach of the Account Agreements until they were served with this lawsuit, seeking reimbursement for payments made. Additionally, Wells Fargo argues Defendants are not entitled to bring a breach of contract claim because they did not suffer damages. Defendants did suffer damages in the form of this lawsuit and stand to lose more should Wells Fargo prevail, and Defendants are forced to pay the interest on money Wells Fargo voluntarily and negligently paid.

### b. WELLS FARGO CANNOT PROVE ITS ACCOUNT AGREEMENT PROVISIONS ARE NOT MANIFESTLY UNREASONABLE.

The provisions of the Accounts Agreements it relies upon in seeking restitution are manifestly unreasonable to the extent they permit Wells Fargo to circumvent its statutory requirement to exercise ordinary care. O.C.G.A § 11-4-103. In Georgia, "an account agreement is controlling unless it is manifestly unreasonable." Freese v. Regions Bank, N.A., 284 Ga. App. 717, 721 (2007). Wells Fargo stacks together two provisions of the Account Agreements for the proposition that it may recover from Defendants because they have not returned their accounts, which Wells Fargo "overdrew," to a positive balance. [Wells Fargo

Brief, Doc. No. 55-1, p. 16.]. First, it cites the Account Agreement provision regarding responding to legal process:

> If we [Wells Fargo] incur any fees or expenses (including attorney's fees and expenses) due to responding to legal process related to your account, we may charge these costs to any account you maintain with us.

[Business Account Agreement, Doc. No. 63-12, p. 13.] Next, Wells Fargo contends it has authority to take an account holder's accounts into overdraft to pay expenses that flow from responding to legal process and demand repayment. [Wells Fargo Brief, Doc. 55, pp. 17-19.] In support it cites,

> If you have an overdraft on your account (including transactions we have paid on your behalf into overdraft, plus any fees), you must make a deposit or transfer promptly to return your account to positive balance.

[Business Account Agreement, Ex. D, p. 23.]

Defendants do not contest that Wells Fargo was required by Georgia law to answer the Garnishment Notice in compliance with applicable Georgia Statutes. O.C.G.A. §§ 18-4-4, 18-4-10, and 18-4-22. Presumably, Wells Fargo has a policy **REDACTED** Wells Fargo, however, cannot manipulate provisions drafted by them to craft a method to recover from Defendants when it negligently responded to the Garnishment Notice. [*See* Defendants' Response to Wells Fargo's Statement of Material Facts, Doc. No. 77, Defendant's Response to Statement No. 4, 5, 9.]

Stuck with a pending default judgment, Wells Fargo knowingly chose to make a payment of money that did not exist in the Defendants' accounts, which it has called an "overdraft." Wells Fargo's own representative REDACTED

REDACTED As explained by Timothy Merck,

REDACTED

REDACTED

REDACTED

[Timothy Merck Dep., Ex. A, 54:10-21.]

Defining the payment as an "overdraft" is not only inconsistent with Wells Fargo's representative's testimony but it exemplifies the knowing nature of the payment, and the exception to bank policy that required it. Nevertheless, Wells Fargo claims it is entitled to repayment. Following Wells Fargo's position—that it may recover any expenses incurred due to responding to legal process related to any account—to its logical end, Wells Fargo could have paid over 1.9 million dollars, well over the amount of funds in Defendants' accounts, and recovered it all from Defendants by "overdrafting their accounts" and citing the above Account Agreements. This conclusion essentially affords Wells Fargo absolute immunity

and is extremely unjust to account holders like Defendants. The provisions of the Account Agreements that Wells Fargo relies upon cannot be construed to insulate its material breach by failing to exercise ordinary care.

Wells Fargo advances this argument to escape its most basic duty to exercise ordinary care, which is manifestly unreasonable. Wells Fargo cannot rely on these provisions when it has acted negligently by failing to follow its own policies and procedures when processing garnishments and violated its own provisions and Georgia law requiring it to act with ordinary care. Defendants, therefore, are entitled to summary judgment on Wells Fargo's breach of contract claim because no genuine issues of fact exist as to whether Wells Fargo exercised ordinary care in processing the Garnishment Notice or whether the Account Agreement provisions on which Wells Fargo relies are manifestly unreasonable.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court grant its Motion for Summary Judgment on Plaintiff's claims against it.

This 24th day of December 2018.

[*SIGNATURE ON FOLLOWING PAGE*]

        HUFF, POWELL & BAILEY, LLC

        */s/ A.J. Cheek*

        _____
        Daniel J. Huff
        Georgia Bar No. 374860
        A.J. Cheek
        Georgia Bar No. 542381

999 Peachtree Street, NE
Suite 950
Atlanta, GA 30309
dhuff@huffpowellbailey.com
acheek@huffpowellbailey.com

*Attorneys for Defendants*

## FONT CERTIFICATE

Pursuant to Local Rule 7.1D, I hereby certify that this pleading was prepared using a font and point selection approved by the Court in Local Rule 5.1C.

This 24th day of January, 2019.[1]

                            HUFF, POWELL & BAILEY, LLC

                            */s/ A.J. Cheek*

                            _____
                            Daniel J. Huff
                            Georgia Bar No. 374860
                            A.J. Cheek
                            Georgia Bar No. 542381

999 Peachtree Street, NE
Suite 950
Atlanta, GA 30309
dhuff@huffpowellbailey.com
acheek@huffpowellbailey.com

*Attorneys for Defendants*

---

[1] Defendants initially filed this Reply Brief on December 23, 2018, [Doc. No. 76.] and now refile this Reply Brief pursuant the Court's January 17, 2019 Order [Doc No. 86.]

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,**<br><br>    Plaintiff,<br><br>v.<br><br>**AIRPORT MINI MALL, LLC, YES ASSETS, LLC, JEROME C. YEH, JENNY YEH, AND DONALD YEH,**<br><br>    Defendants. | **CIVIL ACTION FILE NO.**<br>**1:17-cv-04249-AT** |

---

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to the Clerk of Court using the CM/ECF system which automatically sent e-mail notification of such filing to all attorneys of record.

Nancy H. Baughan, Esq.
Julie A. Wood, Esq.
Parker Hudson Rainer & Dobbs, LLP
303 Peachtree Street, N.E. Suite 3600
Atlanta, GA 30308

[*Signature on Following Page*]

This 24th day of January, 2019.

                                 HUFF, POWELL & BAILEY, LLC

                                 */s/ A.J. Cheek*

                                 _____
                                 Daniel J. Huff
                                 Georgia Bar No. 374860
                                 A.J. Cheek
                                 Georgia Bar No. 542381

999 Peachtree Street, NE
Suite 950
Atlanta, GA 30309
dhuff@huffpowellbailey.com
acheek@huffpowellbailey.com

*Attorneys for Defendants*