IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> AIRPORT MINI MALL, LLC, YES ASSETS, LLC, JEROME C. YEH, JENNY YEH, AND DONALD YEH, <br><br> Defendants. | CIVIL ACTION FILE NO. 1:17-cv-04249-AT |

**DEFENDANTS' RESPONSE TO PLAINTIFFS WELLS FARGO BANK NA'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1(3), Defendants Airport Mini Mall, LLC, Yes Assets, LLC, Jerome C. Yeh, Jenny Yeh, And Donald Yeh hereby files their Response to Plaintiff's Statement of Additional Material Facts:

**Additional Statement No. 1:**

When Wells Fargo filed its answer on June 23, 2017 in the Garnishment Action and made the legally required payment to the state court, a default judgment had been entered against Wells Fargo in the Garnishment Action. See Certified

Copy of Default Judgment (attached as Exhibit F to Wells Fargo's Opposition to Defendants' Motion for Summary Judgment); WF Aff. ¶ 43 and Ex. 16.

**Defendants' Response:**

Defendants state that the facts set forth in Additional statement one state an issue and a legal conclusion and do not comply with LR 56.1(B)(1)(c) or (B)(3)c). They also imply that the Default Judgment was not the result of negligence of Wells Fargo, and this is not correct.

The fact that a Default Judgment had been entered against Wells Fargo when it filed its Answer on June 23, 2017 was caused by Wells Fargo's own negligent handling of its receipt of the Notice of Garnishment against Defendants. Dep. Erica Cook 51:1-12, 58:7-16. According to Ms. Cook, **REDACTED** Id. at 37:2-5. However, in this instance, Wells Fargo did not comply with the statute, its own policies or practices because it did not answer the Garnishment within the statutory time period and had to move to open a default judgment because it did not comply with Georgia law. WF Aff. ¶ 43.

**Additional Statement No. 2:**

On June 23, 2017, Wells Fargo filed its answer, made the legally required payment to the state court and moved the state court to open default as permitted by the Garnishment statute. WF Aff. ¶ 43 and Ex. 16;

Declaration of Julie A. Wood (attached as Exhibit G to Wells Fargo's Motion for Summary Judgment) at ¶¶4-5 and Exhibit 1 thereto.

**Defendants' Response:**

Defendants state that the facts set forth in Additional statement two state an issue and a legal conclusion and do not comply with LR 56.1(B)(1)(c) or (B)(3)c). They also imply that the Default Judgment was not the result of negligence of Wells Fargo, and this is not correct. The fact that a Default Judgment had been entered against Wells Fargo when it filed its Answer on June 23, 2017 was caused by Wells Fargo's own negligent handling of its receipt of the Notice of Garnishment against Defendants. To be specific, the approximate two-month delay in responding to the Notice of Garnishment was caused by Wells Fargo's failure to identify the Defendants as account holders, because according to Erica Cook,



Dep. Erica Cook 51:1-12. She testified further,



Id. 58:7-16. In addition to this failure, another Wells Fargo employee failed to identify the Defendants.  According to Ms. Cook,



Id. 60:20-23.  Two separate employees failed to process the Garnishment notice in compliance with Wells Fargo policy and practice, and in contravention to Georgia law. According to Ms. Cook,





Id. 35:9-21. According to her, REDACTED Id. at 37:2-5.

However, in this instance, Wells Fargo did not comply with its own policies or practices because it did not answer the Garnishment within the statutory time period and had to move to open a default judgment because it did not comply with Georgia law. WF Aff. ¶ 43.

**Defendants' Statement No. 3:**

The Account Agreement defines an "overdraft" as "a negative balance in [the] account." WF Aff. ¶39.

**Defendants' Response:**

Defendants state that the facts set forth in Additional statement three do not comply with LR 56.1(B)(1)(c) or (B)(3)c). This is not a material fact and it is stated as a legal conclusion implying that Wells Fargo had authority to make payments of funds that were withdrawn as a result of Wells Fargo's own negligence by calling them an "overdraft."

Wells Fargo knowingly chose to make a payment of money that did not exist in the Defendants' accounts, which it has called an "overdraft." REDACTED

REDACTED

As explained by Timothy Merck,



Timothy Merck Dep. 54:10-21. Defining the payment as an "overdraft" does not justify the actions of Wells Fargo in allowing the Garnishment action to go into default or permitting Defendants to make withdrawals.

**Additional Statement No. 4:**

The Account Agreement sets forth that "overdraft protection" is an optional service in which a customer may enroll whereby Wells Fargo would "transfer/advance available funds in [the] linked account(s) to your checking account when needed to cover your transactions." WF Aff.¶¶29-31 and Ex. 11, p. 19, Ex. 12, p. 22, and Ex. 14, p. 22.

**Defendants' Response:**

Defendants state that the facts set forth in Additional statement four do not comply with LR 56.1(B)(1)(c) or (B)(3)c. This is not a material fact and it is stated as a legal conclusion implying that Wells Fargo had authority to make payments of

funds that were withdrawn as a result of Wells Fargo's own negligence by calling them an "overdraft," and citing a banking service to "cover transactions" from available funds in "linked accounts" when there is no evidence of "linked accounts" or "available funds" in any of Defendants' accounts. Wells Fargo knowingly chose to make a payment of money that did not exist in the Defendants' accounts, which it has called an "overdraft." REDACTED

REDACTED As explained by Timothy Merck,

REDACTED

REDACTED

REDACTED

Timothy Merck Dep. 54:10-21. In addition, there has been no evidence that Defendants had any "linked account" described in this definition which supplied the funds to pay the Garnishment. To the contrary, the Defendants' accounts were moved into negative balances as a result of the payment, (the total negative balance in the accounts was $300,573.96. WF Aff. ¶46) because the funds were no longer present and there was no linked account to cover the balance.

**Additional Statement No. 5:**

The specific provisions in the Account Agreement relating to the parties' rights and duties as it relates to garnishments states in full:

**How do we handle legal process?**

> Legal process includes any levy, garnishment or attachment, tax levy or withholding order, injunction, restraining order, subpoena, search warrant, government agency request for information, forfeiture or seizure, and other legal process relating to your account.
> We will accept and act on any legal process we believe to be valid, whether the process is served in person, by mail, by electronic notification, or at any banking location.
> If we incur any fees or expenses (including attorney's fees) due to responding to legal process related to your account, we may charge these costs to any account you maintain with us.

WF Aff. ¶37 and Ex. 11, p. 11, Ex. 12, p. 11, Ex. Ex. 13, p. 13 and Ex. 14, p. 13.

After learning that Wells Fargo made the legally required payment to the state court and charged their accounts, Defendants continued to maintain their Wells Fargo accounts until Wells Fargo closed them in July or August 2017. See Yes Depo. 35:19-36:6 and Ex. 13, 38:9-15 and Ex. 15. And 40:15-25 and Ex. 17, Airport Depo. 65:13-66:3 and Ex. 18, 69:10-22 and Ex. 20, and 71:13-21 and Ex. 22.

**Defendants' Response:**

Defendants state that the facts set forth in Additional statement five do not comply with LR 56.1(B)(1)(c) or (B)(3)c. This is stated as a legal conclusion implying that Wells Fargo had authority to make payments of funds that Wells

Fargo negligently released and a legal conclusion that Defendants did not contest the payment by failing to close accounts with negative balances.

Provisions of the Account Agreements attempting to justify Wells Fargo's payment of the Garnishment in this matter after the Defendants had withdrawn the funds at issue ignore the relevant provision of both Agreements that requires Wells Fargo to act with ordinary care,

> Except to the extent we fail to exercise 'ordinary care' or to comply with the Agreement, you agree to indemnify and hold us harmless from all claims, demands, losses, liabilities, judgments and expenses (including attorneys' fees and expenses) arising out of or in any way connected with our performance under this Agreement.

(Doc. 63-1, p. 18). This provision does not set out which specific part of the Account Agreements Wells Fargo needs to act with "ordinary care" regarding because Wells Fargo cannot choose when to act with ordinary care by contracting around that requirement.

Ms. Cook testified that REDACTED Id. 70:4-71:7. Despite this knowledge, Wells Fargo did not answer the Garnishment until June 23, 2017. WF Aff. ¶ 43.

**Additional Statement 6:**

After learning that Wells Fargo made the legally required payment to the state court and charged their accounts, Defendants continued to maintain their Wells Fargo accounts until Wells Fargo closed them in July or August 2017. See Yes Depo. 35:19-36:6 and Ex. 13, 38:9-15 and Ex. 15, and 40:15-25 and Ex. 17; Airport Depo. 65:13-66:3 and Ex. 18, 69:10-22 and Ex. 20, and 71:13-21 and Ex. 22.

**Defendants' Response:**

Defendants state that the facts set forth in Additional statement six do not comply with LR 56.1(B)(1)(c) or (B)(3)c. This fact is not material. In addition, Wells Fargo is trying to draw a legal conclusion by asserting that Defendants did not close their accounts which had negative balances due to Wells Fargo's payment towards the Garnishment action. (The total negative balance in the accounts was $300,573.96. WF Aff. ¶46). The fact that Wells Fargo closed Defendants' accounts before the Defendants were able to is immaterial to Wells Fargo's negligent processing of the Garnishment action which resulted in the failure to freeze Defendants' accounts and the ultimate Default Judgment against Wells Fargo.

**Additional Statement No. 7:**

The Account Agreement specifically states that if one of its terms, such as the indemnification provision cited by Defendants, is determined to be invalid or not enforceable that such invalidity or enforceability "will not affect the

enforceability or validity of the remaining terms of the Agreement." WF Aff. ¶37 and Ex. 11, p. 2, Ex. 12, p. 2, Ex. 13, p. 2 and Ex. 14, p. 2.

**Defendants' Response:**

Defendants state that the facts set forth in Additional statement seven do not comply with LR 56.1(B)(1)(c) or (B)(3)c). This is stated as a legal conclusion implying that Wells Fargo had authority to make payments of funds that Wells Fargo negligently released. Provisions of the Account Agreements attempting to justify Wells Fargo's payment of the Garnishment in this matter after the Defendants had withdrawn the funds at issue ignore the relevant provision of both Agreements that requires Wells Fargo to act with ordinary care,

> Except to the extent we fail to exercise 'ordinary care' or to comply with the Agreement, you agree to indemnify and hold us harmless from all claims, demands, losses, liabilities, judgments and expenses (including attorneys' fees and expenses) arising out of or in any way connected with our performance under this Agreement.

(Doc. 63-1, p. 18). This provision does not set out which specific part of the Account Agreements Wells Fargo needs to act with "ordinary care" regarding because Wells Fargo cannot choose when to act with ordinary care by contracting around that requirement. Citing other provisions of the Account Agreements is moot due to their unenforceability.

Respectfully submitted this 24th day of January, 2019.[1]

                HUFF, POWELL & BAILEY, LLC

                */s/ A.J. Cheek*
                _____
                Daniel J. Huff
                Georgia Bar No. 374860
                A.J. Cheek
                Georgia Bar No. 542381

999 Peachtree Street, NE
Suite 950
Atlanta, GA 30309
dhuff@huffpowellbailey.com
acheek@huffpowellbailey.com

*Attorneys for Defendants*

---

[1] Defendants initially filed this Response to Statement of Additional Facts on December 23, 2018, [Doc. No. 78.] and now refile this Pleading pursuant the Court's January 17, 2019 Order [Doc No. 86.]

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,** | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. 1:17-cv-04249-AT |
| **AIRPORT MINI MALL, LLC, YES ASSETS, LLC, JEROME C. YEH, JENNY YEH, AND DONALD YEH,** | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF WELLS FARGO'S OBJECTIONS AND RESPONSES TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED** to the Clerk of Court using the CM/ECF system which automatically sent e-mail notification of such filing to all attorneys of record.

Nancy H. Baughan, Esq.
Julie A. Wood, Esq.
Parker Hudson Rainer & Dobbs, LLP
303 Peachtree Street, N.E. Suite 3600
Atlanta, GA 30308

[*Signature on Following Page*]

This 24th day of January, 2019.

                HUFF, POWELL & BAILEY, LLC

                */s/ A.J. Cheek*

                _____
                Daniel J. Huff
                Georgia Bar No. 374860
                A.J. Cheek
                Georgia Bar No. 542381

999 Peachtree Street, NE
Suite 950
Atlanta, GA 30309
dhuff@huffpowellbailey.com
acheek@huffpowellbailey.com

*Attorneys for Defendants*