IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WELLS FARGO BANK, N.A.,            :
                                  :
                                  :
        Plaintiff,                :
                                  :
v.                                :        CIVIL ACTION NO.
                                  :        1:17-cv-04249-AT
AIRPORT MINI MALL, LLC, *et al.*, :
                                  :
                                  :
        Defendants.               :

## ORDER

This case arises out of a $1.9 million judgment entered by this Court against

Defendants Airport Mini Mall, LLC, Yes Assets, LLC, Jerome C. Yeh, and Donald

Yeh following a jury trial finding them liable to Luxottica Group, S.p.A. and Oakley,

Inc. for contributory trademark infringement.  Wells Fargo Bank paid $312,829.00

of the judgment in a garnishment action filed by Luxottica and Oakley in the State

Court of Clayton County.

The parties' Cross Motions for Summary Judgment are currently pending

before the Court [Doc. 55 and Doc. 63]. After Defendants[1] failed to repay Wells

Fargo the $312,829.00 paid toward the judgment in the garnishment action, Wells

Fargo filed this action for breach of contract, unjust enrichment, and money had

---

[1] Although Jenny Yeh was a defendant in the Luxottica/Oakley trademark action, the jury found her not liable for the infringement.  However, because she held a joint account with her husband Jerome Yeh, Wells Fargo has named her as a Defendant in this action along with the other judgment-debtor account holders.

and received.   Wells Fargo claims Defendants breached their account agreements by failing to correct a negative balance in their accounts. That negative balance was created when Wells Fargo debited the accounts in the amount of $312,829.00 when there were insufficient funds in the account to cover the debits, thus resulting in an overdraft.   Alternatively, Wells Fargo contends that Defendants are not entitled to retain the benefit of a reduction of the amount of the judgment as a result of Wells Fargo's payment under either an unjust enrichment or money had and received equitable theory. Defendants claim that Georgia's voluntary payment doctrine bars recovery by Wells Fargo.

For the reasons explained below, Wells Fargo's Motion for Summary Judgment is **GRANTED IN PART** and Defendants' Motion for Summary Judgment is **DENIED**.

## I.    Factual Background

The following facts are undisputed.

On February 28, 2017, a $1.9 million judgment was entered against the Defendants (except Jenny Yeh) in favor of Luxottica Group, S.p.A. and Oakley, Inc. in a separate action pending before this Court.[2] (*See* Luxottica Group, S.p.A., et al v. Airport Mini Mall, LLC, et al, Civil Action No. 1:15-cv-01422-AT, Docs. 160, 161.) The Court issued a Writ of Execution in the full amount of the judgment on March

---

[2] The case was tried before a jury from February 13, 2017 to February 28, 2017 in Civil Case No. 1:15-cv-01422-AT.  The jury found Airport Mini Mall, LLC, Yes Assets, LLC, Jerome C. Yeh, and Donald Yeh liable to Luxottica and Oakley for contributory trademark infringement.  The Court entered judgment on the jury's verdict on February 28, 2017.

21, 2017. Defendants moved for a stay of the enforcement of the judgment pending a ruling on their motion for judgment as a matter of law. The Court granted a limited stay of the Writ of Execution, but ordered Defendants to post a bond in the amount of $1,900,000 plus post-judgment interest totaling $15,200 no later than April 19, 2017 to secure the judgment. (*Id.* at Docs. 172, 176.) The Court warned that if defendants failed to post the bond, the stay would be lifted and Luxottica and Oakley would be permitted to pursue enforcement of the judgment. Defendants did not post the required bond.[3]

On April 21, 2017, Luxottica and Oakley filed a garnishment action for the balance due on the judgment of $1,902,246.60 in the State Court of Clayton County, naming Defendants (except Jenny Yeh) as Defendants and Wells Fargo as a garnishee.[4] (Ex. G to Pl.'s Mot., Doc. 55-7.) Wells Fargo received service of the garnishment action on April 21, 2017. Defendants admit they received notice of the garnishment action filed by Luxottica and Oakley with the State Court of Clayton County on April 21, 2017. (Defs.' Resp. to Pl.'s SMF ¶ 42.)

Defendants maintained multiple consumer and business bank accounts with Wells Fargo. (Defs.' Resp. to Pl.'s SMF ¶¶ 1, 2, 10, 11, 19, 24.) Upon receipt of the garnishment action, Wells Fargo performed a search to identify Defendants'

[3] On December 19, 2017, the Court denied Defendant's post-trial motion for judgment as a matter of law in the Luxottica/Oakley action and on January 12, 2018, Defendants filed an appeal with the Eleventh Circuit. On August 7, 2019, the Eleventh Circuit affirmed the judgment entered in favor of Luxottica and Oakley, and the certified mandate of that decision issued on September 5, 2019.
[4] The Affidavit of Garnishment indicates the balance due on the judgment of $1,902,246.60 consists of the $1,900,000 principal and $2,246.40 post-judgment interest. (Doc. 63-2.)

accounts but did not locate Defendants' accounts in the computer system. (Affidavit of Cynthia Bennett-Parks ¶ 42; Deposition of Timothy Merck (Wells Fargo F.R.C.P. 30(b)(6) Representative), Doc. 40 at 22-23.) Wells Fargo did not file anything in the state court garnishment action indicating its inability to locate Defendants' accounts.

Over the next few weeks and on advice of their lawyer, Louis Bridges, following the entry of the Luxottica/Oakley judgment, Defendants withdrew substantially all the money from their Wells Fargo accounts. (Defs.' Resp. to Pl.'s SMF ¶ 45.)  In late April 2017, Yes Assets withdrew $12,086.11, $98,818.36, and $28,827.63 from its three accounts respectively.  (Defs.' Resp. to Pl.'s SMF ¶ 47.) In early May 2017, Airport Mini Mall withdrew $30,743.34, $4,747.55, $8,156.21, and $63,391.90 from its four accounts respectively.  (Defs.' Resp. to Pl.'s SMF ¶ 46.) On May 1, 2017, Jenny Yeh went into Wells Fargo and wrote a check to herself for $34,884.00 from her joint account with Jerome Yeh. (Defs.' Resp. to Pl.'s SMF ¶ 48.)  The same day, Donald Yeh also made a Venmo payment to himself in the amount of $1,050.00. (Defs.' Resp. to Pl.'s SMF ¶ 49.)

Meanwhile, because Wells Fargo failed to file anything in response to the garnishment action, the State Court of Clayton County entered default judgment against Wells Fargo pursuant to O.C.G.A. § 18-4-22 on June 8, 2017, in the amount of $1,902,246.40 and $216 in court costs.[5] (Ex. F to Defs.' Resp. to Pl.'s Mot., Doc.

---

[5] O.C.G.A. § 18-4-22 provides that if a financial institution garnishee fails to timely file an answer, the financial institution is automatically in default and "judgment by default may be entered at

69-6.) By June 14, 2017, Wells Fargo had located Defendants' accounts, notified Defendants of Wells Fargo's receipt of the garnishment action, and debited the accounts pursuant to the garnishment action in the total amount of $312,829.00. (Ex. F to Defs.' Mot., Doc. 63-7 at 3–12.)  Wells Fargo calculated the garnishment amount owed based on the funds present in Defendants' accounts on the date of service of the garnishment action, April 21, 2017, plus five days thereafter. (Bennett-Parks Aff. ¶ 44, Doc. 55-10.)  The account statements for Defendants' accounts reflected these debits as "legal order debits" on June 9, 2017 and June 14, 2017.  (Defs.' Resp. to Pl.'s SMF ¶ 49; Ex. M to Defs' Mot, Doc. 63-14.)

On June 23, 2017, Wells Fargo filed an answer to the garnishment action in the State Court of Clayton County, along with cashier's checks in the amount of $312,829.00 made payable to the State Court of Clayton County. (Ex. 16 to Pl.'s Mot., Doc. 55-26.)  The same day, Wells Fargo also filed a motion for relief from the default judgment and to modify the amount of the judgment from $1,902,246.40 to $312,829.00, the amount paid to the court that was subject to garnishment at the time of service of the garnishment action.  (Doc. 69-7 at 7-13.) The electronic case docket reflects that the state court entered an Order on June 26, 2017 granting Wells Fargo's motion and that the judgment was reduced to $312,829.00, plus $50, as provided in O.C.G.A. § 18-4-24.[6] The remaining balance

---

any time thereafter against such garnishee for the amount remaining due on the judgment obtained against the defendant as shown in the plaintiff's affidavit of garnishment."
[6] *See* https://www.claytoncountyga.gov/government/courts/court-case-inquiry (last visited on September 25, 2019).

of the $1.9 million judgment against Defendants has been reduced to approximately $1.6 million as a result of Well's Fargo's payment in the garnishment action. (Defs.' Resp. to Pl.'s SMF ¶ 62.)

At the time that Wells Fargo debited Defendants' accounts, on June 9, 2017 and June 14, 2017, the accounts no longer contained sufficient funds. (Defs.' Resp. to Pl.'s SMF ¶ 57.) The legal order debits made by Wells Fargo in response to the garnishment action resulted in overdrafts on Defendants' accounts in the total amount of $300,573.96.  (*See* Defs.' Resp. to Pl.'s SMF ¶¶ 60-61.)  Defendants received notice of the legal order debits and the resulting negative balances in their accounts but never deposited any additional money in their accounts to bring them to a positive balance.  (Defs.' Resp. to Pl.'s SMF ¶ 58.)

Wells Fargo filed this action against Defendants on October 25, 2017, asserting claims for breach of contract, unjust enrichment, and money had and received.  The claims are based on the Court's diversity jurisdiction. The parties have filed Cross Motions for Summary Judgment on each of Wells Fargo's claims.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee's note). Summary judgment is appropriate when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tidmore Oil Co., Inc. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384, 1387–88 (11th Cir. 1991). The substantive law governing the action determines whether an element is essential. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *DeLong Equip. Co. v. Washington Mill Abrasive Co.*, 887 F.2d 1499, 1505 (11th Cir. 1989).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the non-movant's case. *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1583 n.16 (11th Cir. 1991); *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). A dispute of a material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Liberty Lobby*, 477 U.S. at 248. However, if the nonmoving party's response to the summary judgment motion consists of nothing more than mere

conclusory allegations, then the court must enter summary judgment in the moving party's favor. *Pepper v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, [then] there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587; *see also Liberty Lobby*, 477 U.S. at 252; *Johns v. Jarrard*, 927 F.2d 551, 556 (11th Cir. 1991).

In assessing whether the movant is entitled to summary judgment in its favor, the district court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992); *Ryder Int'l. Corp. v. First Am. Nat'l. Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). The Court must avoid weighing conflicting evidence. *Liberty Lobby*, 477 U.S. at 255; *McKenzie v. Davenport–Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987). A mere "scintilla" of evidence supporting the opposing party's position, however, will not suffice. *See, e.g., Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but requires a determination of whether either of the parties deserves judgment as a matter of

law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984).  Cross motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts.  *Id.* at 1555–56.

## III.  Analysis

Wells Fargo seeks summary judgment on its breach of contract claim, asserting there is no dispute of any material fact because the Account Agreements governing Defendants' accounts require Defendants to correct any overdrafted account by replenishing their accounts to at least a zero-dollar balance, plus pay all fees and costs incurred by Wells Fargo.

Wells Fargo points first to the undisputed fact that each of the Defendants maintained accounts with Wells Fargo, and that all the accounts were governed by agreements which each Defendant signed for their respective accounts. (Doc. 55-1 at 3–4). Under the Account Agreements, Wells Fargo was permitted to charge the accounts for any fees or expenses incurred by Wells Fargo in responding to "legal process" related to Defendants' accounts as follows:

9

> Legal process includes any levy, garnishment or attachment, tax levy or withholding order . . . forfeiture or seizure, and other legal process relating to your account.
>
> We will accept and act on any legal process we believe to be valid . . .
>
> If we [Wells Fargo] incur any fees or expenses (including attorney's fees and expenses) due to responding to legal process related to your account, we may charge these costs to any account you maintain with us.

(Bennett-Parks Aff., Doc. 55-10 at 9; Ex. 11, Doc. 55-21 at 15)).  A "garnishment" is an applicable "legal process." (*Id.*)

The Account Agreements also discuss Defendants' responsibility if their accounts have an overdraft:

> If you have an overdraft on your account (including transactions we have paid on your behalf into overdraft, plus any fees), you must make a deposit or transfer promptly to return your account to a positive balance.
>
> If you fail to bring your checking account to a positive balance, we will close your account. . . . You agree to reimburse us for the costs and expenses (including attorneys' fees and expenses) we incur.

(Bennet-Parks Aff., Doc. 55-10 at 9–10; Ex. 11, Doc 55-21 at 23)).  An "overdraft" is "a negative balance in your account." (Account Agreement, Ex. 11, Doc. 55-21, at 5).

Wells Fargo contends that the plain terms of the Account Agreements provide that Wells Fargo had the contractual right to charge Defendants' accounts for any expenses Wells Fargo incurred in responding to the garnishment action, even if such charge would result in an overdraft on those accounts.  On the date of service of the garnishment action (plus five days thereafter), a total of $312,829.00 in funds were present in Defendants' various Wells Fargo accounts.  Thus, Wells

Fargo contends it was legally required to pay that amount to the state court to open the default entered against it and satisfy its obligations under the Georgia garnishment statute.   When Wells Fargo debited Defendants' accounts for the purpose of making the required garnishment payment to the state court, Defendants did not have sufficient funds in their accounts as they had withdrawn most of the money (upon advice of counsel) upon receiving notice of the garnishment action.   After the "legal order debits" Wells Fargo charged against Defendants' accounts caused overdrafts in Defendants' accounts resulting in negative balances, Wells Fargo asserts the Account Agreements required Defendants to make a deposit to return the accounts to a positive balance. However, Defendants admit they never made any deposits into their accounts and the accounts went into overdraft status.   Thus, according to Wells Fargo, Defendants are in breach of the Account Agreements and are required to reimburse Wells Fargo for the funds expended in responding to the garnishment action.

In response to Wells Fargo's motion and in their own cross motion, Defendants maintain that all of Wells Fargo's claims, including its breach of contract claim, are barred by Georgia's voluntary payment doctrine.  The voluntary payment doctrine is codified at O.C.G.A. § 13-1-13:

> Payments of claims made through ignorance of the law *or* where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered *unless* made under an urgent and immediate necessity therefor or to release person or

property from detention or to prevent an immediate seizure of person or property.[7]

O.C.G.A. § 13-1-13 (emphasis added).  According to Defendants, these conditions are met here, and Wells Fargo cannot recover the payments that were knowingly made from accounts with insufficient funds.  (Defs.' Mot., Doc. 63-1 at 7-8.) Defendants also contend that Wells Fargo, as the party seeking to recover a payment, bears the burden of showing that the voluntary payment doctrine does not apply.

The Court finds that the voluntary payment doctrine does not apply to Wells Fargo's payment in the garnishment action for the reasons discussed below.

Before recovery of a payment is barred by the doctrine, the payment must first have been made through ignorance of the law (or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party). *Cotton v. Med-Cor Health Information Solutions, Inc.*, 472 S.E.2d 92 (Ga. Ct. App. 1996).  "A *voluntary* payment is one made by a mere volunteer who pays money to another while *under no legal obligation to do so* or compelled to preserve some right or property of his own thereby." *Cloud v. Bagwell*, 64 S.E. 921, 925 (Ga. Ct. App. 1951) (emphasis added);

---

[7] Thus, under the statute, payments of claims made through ignorance of the law are deemed voluntary and cannot be recovered *unless* (i) made under an urgent and immediate necessity therefor or (ii) to release person or property from detention or (iii) to prevent an immediate seizure of person or property. In addition, payments of claims made where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered *unless* (i) made under an urgent and immediate necessity therefor or (ii) to release person or property from detention or (iii) to prevent an immediate seizure of person or property.

*see also Southern Mut. Church Ins. Co. v. ARS Mechanical, LLC*, 703 S.E.2d 363, 366 (Ga. Ct. App. 2010) ("[W]hen a payment is made without a contractual or legal obligation to pay it, the payment is voluntary and the payment cannot be recovered."); Larkins, Ga. Contracts Law and Litigation § 10:18 (2d ed. 2019). Therefore, under the voluntary payment doctrine, a party may not seek to recover payments or "excess" payments:

> where money is paid with a full knowledge of all the facts and circumstances upon which it is demanded, or with the means of such knowledge, *it cannot be recovered back upon the ground that the party supposed he was bound in law to pay it, when in truth he was not.* He shall not be permitted to allege his ignorance of the law; and it shall be considered a voluntary payment

*Energy & Process Corp. v. Jim Daily and Assocs., Inc.*, 662 S.E.2d 835, 839 (Ga. Ct. App. 2008) (internal citation omitted) (emphasis added).

Conversely, a payment that is made pursuant to a legal obligation or is legally necessary – i.e. one that is not made under either ignorance of law or misplaced confidence, deceit or fraud – is not voluntary and an action to recover such a payment is not barred under O.C.G.A. § 13-1-13. *Progressive Elec. Services, Inc. v. Task Force Const., Inc.*, 760 S.E.2d 621, 629 (Ga. Ct. App. 2014) ("[W]e find that in the context of indemnity, the voluntary payment doctrine can be interpreted as merely a corollary to the 'quintessential element' of an indemnity claim, which requires proof of 'the legal compulsion to pay on the part of one seeking [indemnity].' In other words, an indemnitee bears the burden of showing that it was legally required to make the payment for which indemnification is sought as

part of its claim. And, in fact, Georgia courts have denied recovery in indemnity cases where the payor has failed to show that the payment was legally necessary, even without the express application of the voluntary payment doctrine.  Thus, to recover against Progressive and Bush, TFC must show that the Payment was legally necessary (i.e., that the Payment was not voluntary).") (internal citations omitted); *cf. ARS Mechanical, LLC*, 703 S.E.2d at 366 (finding that since Southern Mutual had no contractual obligation to pay the loss, and had not demonstrated a legal necessity for the payment, the voluntary payment doctrine barred its recovery); *Emergency Professionals of Atlanta v. Watson*, 654 S.E.2d 434 (Ga. Ct. App. 2007) ("[N]o indemnity claim exists where party seeking indemnity was not legally obligated to make the payment."); *Telescripps Cable Co. v. Welsh*, , 542 S.E.2d 640 (Ga. Ct. App. 2000) (finding that voluntary payment doctrine bars recovery of a late fee that was legally unenforceable); *Allianz Ins. Co. v. State Farm Fire & Cas. Co.*, 449 S.E.2d 5 (Ga. Ct. App. 1994) (holding that insurer was a volunteer when it paid automobile loss despite express provision in its policy for nonpayment and was therefore not entitled to subrogation); *Transport Ins. Co. v. Maryland Cas. Co.*, 370 S.E.2d 188 (Ga. Ct. App. 1988) ("[Subrogation] is never applied for the benefit of a mere volunteer who pays the debt of another . . . and who is under no legal obligation to make the payment, and is not compelled to do so for the preservation of any rights or property of his own.") (citations and punctuation omitted); *Hartford Fire Ins. Co. v. Payne*, 112 S.E. 736 (Ga. Ct. App. 1922) (finding

that insurer who paid loss and took assignment of insured's right of action against railroad could not recover damages as loss was not covered under the policy).

On its face O.C.G.A. § 13-1-13 does not apply to payments made under legal obligation or legal necessity.  To construe O.C.G.A. § 13-1-13 to preclude the award of damages in a breach of contract suit by the bank/garnishee seeking reimbursement of the compelled payment of statutorily mandated garnishment proceeds wrongfully removed by its account holder would produce an absurd result.  *See Read v. Benedict*, 406 S.E.2d 488, 492 (Ga. Ct. App. 1991) (declining to apply voluntary payment doctrine to specific facts of the case, because "to construe O.C.G.A. § 13–1–13  so as to preclude the award of *damages* in a suit grounded in *tort* when the alleged voluntary payment involved was to a third party not involved in a suit for the purpose of satisfying a claim caused by the negligence of the defendant tortfeasor would produce an absurd result. In such circumstances, it becomes the duty of the courts to seek to construe the statute so that it makes good sense while remaining "faithful to the legislative intent.").  As next explained, the voluntary payment doctrine does not apply here because Wells Fargo was legally obligated under O.C.G.A. §§ 18-4-4 *et seq.,* to pay the garnishment proceeds to the court in the garnishment action.

Georgia's post-judgment garnishment statute required that Wells Fargo make the payment to the state court in the Luxottica/Oakley garnishment action.

Under O.C.G.A. § 18-4-4, all money of the defendant "in the possession or control of the garnishee *at the time of service* of the summons of garnishment upon

the garnishee or coming into the possession or control of the garnishee throughout the garnishment period *shall be subject to* the process of garnishment."[8] O.C.G.A. § 18-4-4(b) (emphasis added).  The "garnishment period" for garnishments served on financial institutions "shall begin on the day of service of the summons of garnishment and . . . shall include the next five days."  O.C.G.A. § 18-4-4(c)(2).

"Under Georgia law, when the summons of garnishment is served upon the garnishee, a lien attaches to the garnished funds."  *Matter of Georgia Steel, Inc.*, 25 B.R. 781, 787 (Bankr. M.D. Ga. 1982) (citing former O.C.G.A. § 18-4-4, *Flournoy v. Pate* (*In re Antley*), 18 B.R. 207, 8 (Bankr. M.D. Ga. 1982), and *Anderson v. Burnham* (*In re Burnham*), 12 B.R. 286 (Bankr. N.D. Ga. 1981)); *Florida First National Bank v. First National Bank*, 267 S.E.2d 849, 852 (Ga. Ct. App. 1980) (recognizing that there is a lien on garnished funds between the time the garnishment summons is served and the time the garnishee files an answer).  And "the lien dates from the service of the garnishment summons." *Matter of Georgia Steel, Inc.*, 25 B.R. at 787.   The garnishment statute further provides that because the notice of  garnishment creates an automatic lien on the funds, "[n]o payment made by the garnishee to the defendant or on his or her behalf, or by any arrangement between the defendant and the garnishee, after the date of service of the summons of garnishment upon the garnishee shall defeat the lien of such garnishment." O.C.G.A. § 18-4-4(a); *see also Burrowes v. Bank of America, N.A.*,

---

[8] The same is true for all obligations owed by the garnishee to the defendant at the time of service of the garnishment.  O.C.G.A. § 18-4-4(a).

797 S.E.2d 493, 496 (Ga. Ct. App. 2017) ("Under the plain language of the applicable garnishment statute, therefore, if the funds for the cashier's check belonged to Burrowes [the debtor] even after they were transferred from his account, and if those funds were within the control of BOA [the garnishee], then they were subject to garnishment [and the statute] required that the Bank pay those funds into the court in the garnishment action.").

"When the garnishee is a financial institution" it shall file its answer to the garnishment "not later than 15 days after the date of service of the summons and *the money [] subject to garnishment shall be paid* to or delivered to the court concurrently with such garnishee's answer."  O.C.G.A. § 18-4-10(c).  Therefore, Wells Fargo was legally obligated to answer the garnishment and pay to the garnishment court the funds in Defendants' Wells Fargo accounts as of April 21, 2017 through April 26, 2017.  *Id.*; *see also Mobile Paint Mfg. Co., Inc. v. Johnston*, 464 S.E.2d 903, 905 (Ga. Ct. App. 1995) ("Under OCGA §§ 18−4−20 and 18−4−82, NationsBank was required to answer the summons of garnishment describing what money was subject to the garnishment and paying that money into court . . . Nor does the fact that NationsBank was unable to locate the account relieve the bank from its responsibilities under the garnishment statutes.").  Defendants acknowledge this in both their Responses to Wells Fargo's Statements of Material Fact and their Response brief.  (Defs.' Resp. to Pl.'s SMF ¶¶ 52, 53 ("Wells Fargo was legally required to make the garnishment payment, but the payment was not properly made as an 'overdraft' from the accounts of Defendants because at the

17

point that Wells Fargo made the payment on June 14, 2017, the Defendants'
accounts no longer had sufficient funds to support the payments."); Defs.' Resp. at
9 ("Here, Wells Fargo was required by law to answer the Garnishment along with
money or other property subject to garnishment not later than 15 days after the
date of service of the summons. O.C.G.A. § 18-4-22.")).

      Wells Fargo's subsequent default did not alter its legal obligation or the legal
necessity of tendering payment of the funds subject to garnishment to the state
court.  Under O.C.G.A. § 18-4-22, if the garnishee fails to file an answer by the
fifteenth day after service of the garnishment summons, the garnishee is
automatically in default, but it may open the default as a matter of right within
fifteen days.[9]  After the expiration of the fifteen day period, if the garnishee remains
in default, the court may enter a default judgment against the garnishee in favor of
the judgment creditor for the entire amount of the creditor's judgment against the
debtor.  O.C.G.A. § 18-4-22.  Though the statutory imposition of such a default
judgment for the failure to timely respond to a valid garnishment is strict, a
garnishee may be relieved from liability by filing a motion under O.C.G.A. § 18-4-
24(a).  If a default judgment is entered, the garnishee may, within ninety days after

---

[9] O.C.G.A. § 18-4-22 provides: "When a garnishee is a financial institution and fails [] to file a
garnishee answer by the fifteenth day after the date of service of the summons of garnishment,
such garnishee shall automatically be in default.  The default may be opened as a matter of right
by the filing of a garnishee answer within 15 days of the day of default and payment of costs.  If
the case is still in default after the expiration of the period of 15 days, judgment of default may be
entered at any time thereafter against such garnishee for the amount remaining due on the
judgment obtained against the defendant as shown in the plaintiff's affidavit of garnishment."

it received service of the default judgment, file a motion to modify the judgment, which must be accompanied by payment of court costs, to have the amount reduced to "an amount equal to the greater of $50.00 or $50.00 plus 100 percent of the amount by which the garnishee was indebted to the [debtor]" as of the date of service of the garnishment action.  O.C.G.A. § 18-4-24(a).  This provision of the garnishment code is "clearly remedial" − "[i]t provides a second chance for a garnishee who, having been personally served with a summons of garnishment, ignored its call for an answer. A limited window of opportunity is afforded such a garnishee through which it can reduce a debt imposed by its initial inaction."[10] *Five Star Steel Contractors, Inc. v. Colonial Credit Union*, 431 S.E.2d 712, 714 (Ga. Ct. App. 1993) (discussing former Code Section 18-4-22).

It is true that the liability of the garnishee to the judgment creditor created by the failure to answer the garnishment under this section is an independent liability from that of the debtor to the judgment creditor.  *In re Cole*, 552 B.R. 903, 913 (N.D. Ga. 2016). The garnishee's default judgment, however, does not extinguish the separate preexisting liability of the judgment debtor.  *See id.* at 913-922 (discussing cases and addressing whether automatic say in bankruptcy applies to garnishment proceedings even if the judgment creditor seeks to satisfy its debt

---

[10] Thus, to ensure the garnishment is ultimately satisfied, Georgia's garnishment statute unquestionably permits the bank/garnishee, upon prompt payment of the garnishment proceeds, to either: (a) open the default as a matter of right by belatedly filing the answer within 15 days of the default, or (b) reduce the default judgment to the amount the bank/garnishee would have paid had it timely answered the garnishment action (i.e. the amount in the defendant's account as of the date of service of the garnishment through the garnishment period) by filing a motion within 90 days of the default judgment.

solely from the garnishee through the garnishee's independent liability and noting, "[t]he proceeding against the garnishee on account of its independent liability is no more of a proceeding to collect a debt of the debtor than a suit against a typical guarantor or co-debtor and a suit against a typical guarantor or co-debtor is not stayed by section § 362.  In such a situation, the typical co-debtor or guarantor could end up paying a debt on which the debtor is also obligated, but that fact situation is not within the scope of § 362. . . .") (internal citations omitted); *In re Johnson*, 479 B.R. 159, 177 (Bankr. N.D. Ga. 2012) "([A] garnishee's independent liability arises only as a remedy for failure to comply with the process, either by default after expiration of a statutory grace and modification periods or because the garnishment court determines on the merits that the garnishee has funds or property subject to garnishment that it did not deliver to the garnishment court. The imposition of independent liability on the garnishee is not the objective of the garnishment proceeding. Rather, it exists only as a remedy for failure to comply with the garnishment laws by delivering the debtor's property to the garnishment court.").

Because the funds in Defendants' accounts as of the date of service of the garnishment action were subject to a statutory lien, Wells Fargo was authorized under the Account Agreements and Georgia's garnishment statute to pay those funds to the court in the garnishment action, despite Defendants' subsequent withdrawal of those funds.  O.C.G.A. § 18-4-4(a) ("[n]o payment made by the garnishee to the defendant or on his or her behalf, or by any arrangement between

the defendant and the garnishee, after the date of service of the summons of garnishment upon the garnishee shall defeat the lien of such garnishment."); *see also Wachovia Bank of Georgia, N.A. v. Unisys Fin. Corp.*, 471 S.E.2d 554, 557 (Ga. Ct. App. 1996) ("Banks should … take whatever steps are necessary to ensure that they can comply with the garnishment laws of this state. Garnishment proceedings are 'measured by the strict terms of the statute.") (citing *Mobile Paint Mfg. Co. v. Johnston*, 464 S.E.2d 903 (Ga. Ct. App. 1995). It follows that Wells Fargo was authorized under the terms of Defendants' Account Agreements to debit Defendants' accounts to satisfy the garnishment lien, even though in doing so Wells Fargo caused the accounts to become overdrawn.[11] Defendants' attempt to prevent satisfaction of the judgment through garnishment, by withdrawing the funds in their account, thereby leaving Wells Fargo responsible for payment in order to comply with its statutory obligations, was prohibited by O.C.G.A. § 18-4-4(a). Accordingly, the Court finds that Defendants are responsible to Wells Fargo

---

[11] Defendants' assertion that Wells Fargo's own witness disputed that the charges to Defendants' accounts were "overdrafts" (and therefore Defendants were obligated pursuant to the agreements to reimburse Wells Fargo for the charges) is a red herring belied by the record. In their motion, Defendants misrepresent the testimony of Wells Fargo's designated 30(b)(6) witness, Timothy Merck. Mr. Merck clearly testified that the charges on the accounts were identified as "legal order debits" and resulted in the accounts being overdrawn. In response to a lengthy line of questioning about how overdraft protection works, Mr. Merck testified that overdraft protection had nothing to do with the debits to these accounts pursuant to a legal obligation in response to the garnishment action. According to Mr. Merck, under these circumstances the bank has paid a debt on behalf of its customer and then charges that debt against the customer's account whether or not there are funds in the account and regardless of whether the customer has purchased overdraft protection. As defined in the Account Agreements, an "overdraft" is "a negative balance in an account." Overdraft protection is an optional product available to a customer whereby the bank will transfer/advance available funds from a linked account or credit line to an account to cover transactions made in an account with insufficient funds.

under the terms of the Account Agreements, for the $312,829.00 payment to the state court.

Defendants assert that Wells Fargo was not permitted to debit their accounts to create overdrafts in excess of $300,000 after Defendants had withdrawn substantially all funds from those accounts leaving them with an insufficient balance to satisfy the garnishment payment.  This is because, according to Defendants, Wells Fargo was negligent in implementing its internal procedures for responding to the garnishment action (by failing to initially locate Defendants' accounts upon receipt of the garnishment summons) and that such negligence resulted in a failure to freeze Defendant's accounts to prevent a depletion of garnishment funds.  Defendants contend that Wells Fargo's failure to exercise ordinary care was itself a breach of the Account Agreements rendering the agreements unenforceable.  (Defs.' Mot. at 17 (citing O.C.G.A. § 13-4-23 ("If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance."))).

Defendants do not appear to challenge Wells Fargo's authority to withdraw funds from accounts subject to a valid garnishment action pursuant to the "legal process" provision of the Account Agreements by taking available funds from the accounts for payment to the court pursuant to Georgia's garnishment statute. Instead, Defendants assert that by failing to freeze their accounts, Wells Fargo breached its duty of ordinary care entitling Defendants to summary judgment on Wells Fargo's breach of contract claim.  When they withdrew the funds from their

accounts, Defendants admit they were on notice of both the $1.9 million judgment entered by this Court and the state court garnishment action filed by Luxottica and Oakley.  Defendants assert that if Wells Fargo had frozen the accounts upon service of the garnishment on April 21, 2017, Defendants would not have been able to withdraw nearly all funds from those accounts.

Defendants cite to two sources for their assertion that Wells Fargo breached a duty of ordinary care.  First, Defendants assert that a general provision of Article 4 of the Uniform Commercial Code ("UCC"), that governs bank deposits and collections, provides that "[t]he effect of the provisions of this article may be varied by agreement, but the parties to [a banking] agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." O.C.G.A. § 11-4-103(a).  Article 4's requirement of "ordinary care," governs "negotiable instruments" which does not include legal process in a garnishment action governed by Georgia's garnishment statute.[12]  For this reason, the UCC does not apply to Wells Fargo charging Defendant's accounts pursuant to a lawful garnishment action.[13]  Moreover, the

---

[12] Defendants argue that the UCC's definition of "negotiable instruments" logically applies to legal orders since negotiable instruments are defined as an unconditional promise or order to pay a fixed amount of money.  Defendants have provided no authority for their assertion and the Court has found none.  Rather, the UCC and case law interpreting the UCC indicate that such "orders to pay" includes items such as certain "notes," "checks," and "money orders," but does not include contracts for services or security deeds.

[13] Even assuming the UCC applied, the rules of construction governing the UCC prevent the interpretation Defendants advance here.  The UCC provides that unless displaced by particular provisions, the principles of law and equity, including fraud, shall supplement its provisions, and incorporates the obligation of good faith in the performance and enforcement of every contract or duty thereunder. O.C.G.A. § 11-1-103(b) ("Unless displaced by the particular provision of this title, the principles of law and equity . . . shall supplement its provisions."); O.C.G.A. § 11-1-304 ("Every

UCC does not apply here because Defendants have not filed any action or counterclaim against Wells Fargo seeking damages for Wells Fargo's alleged breach of any duty of care owed under the Account Agreements.  Finally, neither provision of the Account Agreements on which Wells Fargo relies contain any terms indicating Wells Fargo seeks to disclaim liability for failing to exercise ordinary care in processing garnishment actions.

The second basis on which Defendants assert a duty of ordinary care is the provision of the Account Agreements that provides:

> Except to the extent we fail to exercise 'ordinary care' or to comply with the Agreement, you agree to indemnify and hold us harmless from all claims, demands, losses, liabilities, judgments, and expenses (including attorney's fees and expenses) arising out of or in any way connected with our performance under the Agreement.

Defendants argue that Wells Fargo's initial failure to locate and freeze Defendants' accounts when it was served with the garnishment action is a breach of this provision.   This cited portion of the Account Agreements is clearly an

---

contract or duty within this title imposes an obligation of good faith in its performance and enforcement."); O.C.G.A. § 11-1-201(20) ("good faith" means "honesty in fact and the observance of reasonable commercial standards of fair dealing"); *see also Boss v. Bassett Furniture Indus. of N. Carolina, Inc.*, 288 S.E.2d 559, 562 (Ga. 1982) (finding action brought more than 12 months after discovery of transfer and would be barred by statute of limitations but that bulk transfer provisions of the UCC would not preclude creditor's pursuit of other remedies against the transferee where principles of law and equity would also apply). Defendants' withdrawal of funds from their accounts was not made in good faith.  *See Eason Publications, Inc. v. NationsBank of Georgia*, 458 S.E.2d 899, 902 (Ga. Ct. App. 1995) ("Contrary to Eason's contention, issues of good faith do not always present jury questions. The facts of a case determine when it is possible to declare as a matter of law whether good faith can be established.").  The admitted purpose of Defendants' transfer of funds from their account was to evade collection of a lawful judgment of this Court.

indemnification provision.  It does not expressly relate to Wells Fargo's authority to withdraw account funds pursuant to valid garnishment actions or Defendant's obligation to remedy an overdraft by redepositing funds to return their accounts to a positive balance. The claim at issue before the Court is not one for indemnification against Defendants for the overdraft amounts, but for Defendants' breach of contract in failing to return their accounts to a positive balance in response to the Wells Fargo's payment of funds in response to the garnishment action.  Wells Fargo points out that no provision of the Account Agreements requires Wells Fargo to locate and freeze an account within a certain timeframe when responding to a garnishment action.  Therefore, any delay on Wells Fargo's part is not a breach of any duty owed to Defendants by Wells Fargo under the Account Agreements.[14]   As Wells Fargo correctly argues, "Defendants cite no authority that would allow a customer to retain a windfall it received by quickly

---

[14] Wells Fargo's failure to freeze Defendants' accounts did not result in a breach of Defendants' rights under the Account Agreements, nor did it result in harm to Defendants.  To the contrary, as a result of Wells Fargo's initial failure to identify Defendants' accounts in response to the garnishment and its failure therefore to place a freeze on those accounts, Defendants were able to withdraw most of the funds and use them for personal and business expenditures.  (Defs.' Resp. to Pl.'s SMF ¶ 63 (admitting that "Defendants used the money they withdrew from their accounts in April and May 2017 to pay their bills")).  Defendants withdrew those funds, with knowledge of the garnishment action, in an obvious effort to avoid having those funds taken subject to the garnishment.  Wells Fargo's failure to freeze Defendants' accounts caused Wells Fargo to go out of pocket for the garnishment payment pending Defendant's reimbursement.   Defendants have identified no injury or damage they allege to have suffered as a result of Wells Fargo's actions on their accounts.  Had Wells Fargo located Defendants' accounts immediately upon receiving service of the garnishment action on April 21, 2017, Wells Fargo would have debited Defendants' accounts in the amount of $312,829 – which was the amount of funds in the accounts as of April 21, 2017 and five days thereafter – and paid the funds to the state court pursuant to O.C.G.A. § 18-4-4.  Under the Account Agreements, Wells Fargo would have also charged Defendants' accounts with any fees or expense (including attorney's fees and expense) Wells Fargo incurred due to responding to the garnishment action.

withdrawing funds from its account simply because the bank was delayed in locating its account (especially when the customer was trying to circumvent the garnishment process).  The lack of authority is not surprising as public policy would not support a legal principle that encouraged account holders to race to the bank to remove funds to avoid legal process." (Pl.'s Reply at 10.)

Accordingly, the Court finds that Wells Fargo is entitled to summary judgment in its favor on Defendant's breach of the Account Agreements.[15]  Wells Fargo is entitled to damages in the amount of $300,573.96 – the principal amount of the garnishment payment minus the offset based on the amount of funds available in Defendants' accounts as of the date the funds were debited from their accounts.  Wells Fargo is further entitled to attorney's fees and expenses incurred in responding to the garnishment action and in this action for breach of contract. The Court finds, however, that Wells Fargo is not entitled to 7% pre-judgment interest pursuant to O.C.G.A. § 7-4-2 as requested.  *See Wachovia Bank of Georgia, N.A. v. Unisys Fin. Corp.*, 471 S.E.2d 554, 558 (Ga. Ct. 1996) ("Georgia's garnishment law provides for a judgment only in the amount claimed in the garnishment, plus costs. O.C.G.A. § 18–4–92. This Section expressly provides 'that the total amount of such judgment shall in no event exceed the amount claimed due by the plaintiff, together with the costs of the garnishment proceeding.' *Id.* Because "[o]ur garnishment statute is in derogation of the common law and, thus,

---

[15] Having found that Wells Fargo is entitled to summary judgment on its breach of contract claim, it is unnecessary to consider the parties' arguments on Wells Fargo's claims for unjust enrichment and money had and received.

must be strictly construed," we conclude that the trial court did not err in denying Unisys' claim for interest in this case.")

## IV.  Conclusion

For the foregoing reasons, the Court hereby **GRANTS IN PART** Plaintiff Wells Fargo's Motion for Summary Judgment [Doc. 55] and **DENIES** Defendants' Motion for Summary Judgment [Doc.  63]. The Court **DIRECTS** Wells Fargo to submit a detailed and itemized application for attorney's fees and expenses consistent with this order **WITHIN 14 DAYS** of the entry of this Order. Defendants may submit any objections based on reasonableness of the fees claimed **WITHIN 21 DAYS** of Wells Fargo's filing.

**IT IS SO ORDERED** this 30th day of September, 2019.

**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**